[Civ. No. 69084. Second Dist., Div. Three. Jan. 31, 1984.]

PHYLLIS SMITH et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ABBOTT FORD, INC., Real Party in Interest.

**COUNSEL**

Murphy, Thornton, Hinerfeld & Elson, Robert E. Hinerfeld, Timothy M. Thornton and John T. Thornton for Petitioners.

No appearance for Respondent.

Shield & Smith and Dennis J. Walsh for Real Party in Interest.

## OPINION

**KLEIN, P. J.**—Phyllis and Jay Smith (the Smiths) petitioned this court for a writ of mandate, seeking relief from the sustaining of the demurrer of Abbott Ford, Inc. (Abbott Ford), real party in interest, to one crucial cause of action without leave to amend.[1]

Because we conclude that the eighth count stated a cause of action for intentional spoliation of evidence, significantly prejudicing the Smiths' opportunity to obtain damages for their injuries, the alternative writ is to be discharged and the trial court directed to overrule the demurrer.

### FACTS[2]

On September 10, 1981, at about 6:10 a.m., Phyllis Smith was driving her car southbound on California Avenue in West Covina. Ramsey Sneed (Sneed) was driving a 1979 Ford van northbound on California Avenue, at the approximate same time and place when the left rear wheel and tire flew off of the van and crashed into the windshield of Phyllis Smith's vehicle. The impact caused pieces of glass to strike her in the eyes and face, resulting in permanent blindness in both eyes and impairment of her sense of smell.

Abbott Ford was the dealer that customized the van with "deep dish mag wheels" before it sold the van to Sneed. Immediately after the accident, the van was towed to Abbott Ford for repairs.

On or about September 25, 1981, Abbott Ford agreed with the Smiths' counsel to maintain certain automotive parts (physical evidence), pending further investigation. Thereafter, Abbott Ford destroyed, lost or transferred said physical evidence, making it impossible for the Smiths' experts to inspect and test those parts in order to pinpoint the cause of the failure of the wheel assembly on the van.

---

[1]We have critically reexamined the pleading in question following a directive from the Supreme Court to issue an alternative writ to the trial court to either vacate its order or show cause why a peremptory writ should not issue.

[2]The facts are developed from the pleadings.

## Procedure

The second amended complaint contained an eighth cause of action entitled "Tortious Interference with Prospective Civil Action By Spoliation of Evidence," stated against Abbott Ford. The prayer also sought exemplary damages. The seventh and ninth causes of action for breach of contract/promissory estoppel and negligence respectively were also concerned with the loss of the physical evidence.

The seventh cause of action specifically alleged that after the accident, Abbott Ford promised the Smiths' counsel that it "would maintain securely in their care, possession, custody and control for later examination and testing by Plaintiffs' technical experts the left rear tire and wheel, lug bolts, lug nuts and brake drum which these Defendants [Abbott Ford] had removed from Defendant['s] van."

It was further alleged that Abbott Ford knew that such physical evidence would be essential proof in a civil action to be brought by the Smiths, and that Abbott Ford knew or should have known that the Smiths would be induced to rely upon its promise by forebearing from seeking a temporary restraining order to compel it to maintain the evidence securely.

These allegations were incorporated by reference into the eighth cause of action, which specifically stated that Abbott Ford "willfully, wrongfully, and intentionally, and with conscious disregard of the probable serious harm to Plaintiffs, and with malice and reckless indifference for the injurious consequences of their acts, concealed, lost, destroyed or otherwise disposed of the physical evidence which they had promised to maintain for Plaintiffs."

The damage alleged was the "significant prejudice" of the Smiths' opportunity to obtain compensation for their grievous physical and emotional injuries.

Abbott Ford demurred to the seventh and eighth causes of action on the grounds they failed to state a cause of action. In sustaining the demurrer only as to the eighth cause of action without leave to amend, the trial court ruled that such an intentional tort did not exist. The Smiths thereafter filed a petition for writ of mandate to direct the trial court to allow this cause of action.

## Discussion

1. *"New and nameless torts are being recognized constantly."*

Prosser instructs us that: "New and nameless torts are being recognized constantly, and the progress of the common law is marked by many

cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before. The intentional infliction of mental suffering, . . ., the invasion of [the] right of privacy, the denial of [the] right to vote, the conveyance of land to defeat a title, the infliction of prenatal injuries, the alienation of the affections of a parent, . . ., to name only a few instances, could not be fitted into any accepted classifications when they first arose, but nevertheless have been held to be torts. The law of torts is anything but static, and the limits of its development are never set. *When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant,* the mere fact that the claim is novel will not of itself operate as a bar to the remedy." (Italics added, Prosser, Torts (4th ed. 1971) § 1, pp. 3-4.) █ "The common thread woven into all torts is the idea of *unreasonable interference with the interests of others."* (Italics added; *id.,* at p. 6.)

California has long recognized "[f]or every wrong there is a remedy." (Civ. Code, § 3523), and has allowed for new torts through the legislative and judicial process. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts § 10, p. 2310.) Legal protection has been afforded recently in the area of wrongful birth (*Stills* v. *Gratton* (1976) 55 Cal.App.3d 698 [127 Cal.Rptr. 652]) and wrongful life (*Turpin* v. *Sortini* (1982) 31 Cal.3d 220 [643 P.2d 954]).

█ In light of the foregoing, we believe that a new tort may be appropriate to cover the intentional spoliation of evidence, since it meets the criteria spelled out by Prosser and recognized by case law.

a. *The Supreme Court appears to have recognized a negligence cause of action for failure to preserve evidence for prospective civil litigation.*

Abbott Ford argued that not only is there no tort of "intentional interference with prospective civil action by spoliation of evidence," but also that there is a failure on the part of the California courts to recognize a cause of action in negligence for the same activity. However, a recent California Supreme Court case appears to recognize an injured party's right to such a cause of action. The recent Supreme Court opinion in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137], indicates that a negligence cause of action could be stated, provided a duty exists on the part of the defendant.

In *Williams,* the plaintiff alleged that she was injured when a piece of heated brake drum from a passing truck flew into her windshield and struck her in the face before coming to rest on the rear seat of her automobile. An officer came to her assistance. The plaintiff also alleged that the officer

assumed the responsibility of investigating the accident and that this investigation was so negligently carried out that it "virtually destroy[ed] any opportunity on plaintiff's part to obtain compensation for the severe injuries and damages she suffered from any other defendants." (*Id.,* at pp. 21-22.)

While the *Williams* court found that the mere stopping to aid a motorist does not in itself create a special relationship which would give rise to a duty and that Williams therefore had not pled a cause of action, the court granted Williams leave to amend her complaint, implying that if she were able to allege a duty, she might be able to state a cause of action for failure to preserve evidence for civil litigation. (*Id.,* at pp. 23-28.)

Significantly, Abbott Ford did not demur to the cause of action for negligent spoliation of evidence which is still viable in the trial court.

b. *The intentional tort cause of action.*

Abbott Ford contends that a cause of action for an intentional tort of spoliation of evidence is precluded under California statutory and case law, because a penal statute has in effect preempted the field.

Penal Code section 135 (section 135) states: "Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor."

*Agnew* v. *Parks* (1959) 172 Cal.App.2d 756, 766 [343 P.2d 118], interpreted the crime set forth in section 135 as an "obstruction of justice" for which only the state can prosecute, and held that there is no civil cause of action available to the party harmed.

In *Agnew,* the plaintiff had already received several favorable medical malpractice verdicts, and subsequently sued certain members of the county medical association " 'For Damages for Conspiracy to Obstruct the Orderly Prosecution of a Civil Action and for Concerted Refusal to Deal.' " (*Id.,* at p. 760.) She alleged that these members conspired to thwart her prior malpractice action against a physician by threatening other members of the association to prevent their testifying in her behalf, that they recommended a biased member as an expert, and that they concealed 18 X-rays of her injuries. (*Id.,* at p. 761.) The *Agnew* court denied the perjury, subornation of perjury and evidence concealment causes of action.

The *Agnew* court observed that there must be an end to civil litigation, and the plaintiff had had the opportunity at an earlier trial to bring the claim of perjury to the attention of the original court. The court held that the alleged new cause of action would have involved essentially a relitigation of matters already adjudicated. (*Id.,* at p. 765.)

The disallowance of such duplicative causes of action after completion of the trial is solidly grounded on the impermissibility of making collateral attacks on the findings of a court and the desire to end litigation. (*Gerini* v. *Pacific Employers Ins. Co.* (1938) 27 Cal.App.2d 52, 55 [80 Cal.Rptr. 499]; *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 632 [99 Cal.Rptr. 393].)

However, the situation in the instant case is vastly different procedurally. The Smiths' case has not yet gone to trial, and therefore, no collateral estoppel issue exists. Furthermore, if the Smiths are not allowed to maintain their intentional spoliation of evidence action at this juncture, if and when they attempt to bring this same action after the trial as the plaintiff in *Agnew* did, they may be met with the same estoppel theory.

Another rationale on which *Agnew* is predicated and is inapposite here is that perjury and subornation of perjury are not answerable in civil actions. (*Agnew* v. *Parks, supra,* 172 Cal.App.2d at p. 765.) ■ Although the court was correct in its statement that "no civil right can be predicated upon a *mere* violation of a criminal statute," (*ibid.,* italics added) in some cases the same act may be both a crime against the state and a tort against an individual. (Prosser, Torts, *supra,* § 2, p. 7.) In such an instance, because the interests invaded are not the same, and the objects to be accomplished by the two suits are different, there may be both a criminal prosecution and a civil tort action for the same offense.

"The distinction between [the tort and the criminal action] lies in the interests affected and the remedy afforded by the law. A crime is an offense against the public at large, for which the state, as the representative of the public, will bring proceedings in the form of a criminal prosecution. The purpose of such a proceeding is to protect and vindicate the interests of the public as a whole, by punishing the offender or eliminating him from society, either permanently or for a limited time, by reforming him or teaching him not to repeat the offense, and by deterring others from imitating him. A criminal prosecution is not concerned in any way with compensation of the injured individual against whom the crime is committed, and his only part in it is that of an accuser and a witness for the state. So far as the criminal law is concerned, he will leave the courtroom empty-handed. [¶] The civil action for a tort, on the other hand, is commenced and maintained by the injured person himself, and its purpose is to compensate him for the

damage he has suffered, at the expense of the wrongdoer. If he is successful, he receives a judgment for a sum of money, which he may enforce by collecting it from the defendant."[3] (Prosser, Torts, *op. cit. supra,* at p. 7.)

In California many torts have analogues in the Penal Code. Among these are: (1) Intentional homicide supports a civil action as wrongful death (*Rios v. Chand* (1955) 130 Cal.App.2d 833 [280 P.2d 47]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 785, p. 3083) and as a crime (Pen. Code, §§ 187-189); (2) a battery is both criminal and tortious (*Bartosh v. Banning* (1967) 251 Cal.App.2d 378 [59 Cal.Rptr. 382]; 4 Witkin, Summary of Cal. Law, *op. cit. supra,* § 194, at p. 2482); (3) conversion as a tort (*De Vries* v. *Brumback* (1960) 53 Cal.2d 643 [2 Cal.Rptr. 764, 349 P.2d 532]) may be prosecuted also as grand theft (Pen. Code, § 484) or robbery (Pen. Code, § 211), as the circumstances indicate.

Even though it is clear that some acts can give rise to both tort and criminal liability, Abbott Ford contends that *Agnew* precludes civil action for intentional spoliation of evidence under section 135 because like false testimony and perjury, it is a form of obstruction of justice and is therefore a wrong against the public rather than against an individual plaintiff. We find this reasoning only partially sound.

False testimony and subornation of perjury occur during the trial and do adversely affect the public at large by interfering with the judicial process as well as impacting on an individual plaintiff. Here, the destruction of the Smiths' physical evidence took place before the trial ever began, and the Smiths seek compensation for the alleged intentional destruction of important evidence to be used in the *forthcoming* litigation. Granted intentional spoliation of evidence is a form of obstruction of justice, it has a devastating effect on a potential plaintiff and could prevent such a plaintiff even seeking justice in a court of law.

Furthermore, Abbott Ford is mistaken in its assumption that section 135 provides a sufficient deterrent. While *Agnew* v. *Parks, supra,* 172 Cal.App.2d at page 766 states that "[c]oncealing or withholding documentary evidence is made a felony by section 135, Penal Code.", it is now only a misdemeanor. (§ 135.) If crucial evidence could be intentionally destroyed by a party to a civil action who thereby stands to gain substantially monetarily by such destruction, the effect of a misdemeanor would be of minimal deterrence.

A recent *criminal* case held that there is no criminal offense under section 135 unless there is proof "that [a] law enforcement investigation in fact had

---

[3]Recent criminal cases allow for restitution to the victim as a condition of defendant's probation. (*People* v. *Goss* (1980) 109 Cal.App.3d 443, 459-461 [167 Cal.Rptr. 224].)

started and/or that law enforcement was or would be looking for the particular item." (*People* v. *Prysock* (1982) 127 Cal.App.3d 972, 1001 [180 Cal.Rptr. 15].)

In *Agnew* v. *Parks, supra,* 172 Cal.App.2d at pages 765-766, plaintiff's *civil* cause of action for acts violative of the language of section 135 was disallowed. We know of no reported prosecution under section 135—adopted in 1872—and Abbott Ford cites us to none, for destroying or concealing documentary evidence relevant only to *prospective civil action.*

Neither section 135 nor *Agnew* prevents the recognition of intentional spoliation of evidence for prospective civil litigation as a *tort.*

2. *Certainty of damages.*

■ The most troubling aspect in allowing a cause of action for intentional spoliation of evidence is the requisite tort element of damages proximately resulting from defendant's alleged act. Here, the underlying product liability case has not yet gone to trial and it is possible that the Smiths could prove their case through other means and recover damages.

■ We appreciate that one who has suffered a legally recognized injury is usually entitled to an award of damages. (Dobbs, Remedies, Damages—Equity—Restitution (1973) § 3.1, p. 135.) However, a plaintiff must not only establish the fact of damages with reasonable certainty, but must also prove the amount of damages with reasonable certainty. (*Id.,* at § 3.3, p. 150.)

The United States Supreme Court provides some guidance in this difficult area. Over 50 years ago it held that "[w]here the *tort itself* is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." (Italics added, *Story Parchment Co.* v. *Paterson P. Paper Co.* (1931) 282 U.S. 555, 563 [75 L.Ed. 544, 548, 51 S.Ct. 248] (action for damages arising under Sherman Antitrust Act for alleged conspiracy); see e.g. *Turpin* v. *Sortini, supra,* 31 Cal.3d at p. 235.)

Courts since then have taken the position that plaintiffs are expected to prove damages with as much accuracy as reasonably possible but "precision

not attainable in the nature of the claim and circumstances is not ordinarily required." (Dobbs, Remedies, Damages—Equity—Restitution, *op. cit. supra,* § 3.3, at p. 151.)

There are many interests which the law seeks to protect wherein damages cannot be proved with certainty. In wrongful death and personal injury cases, amounts of future earnings are uncertain, but are still recoverable. Likewise, in cases of patent or trademark infringement, damages may be difficult to estimate but nevertheless damage awards are sustained. Further, in tort actions such as libel, slander and invasion of privacy, substantial damages are awarded without any proof of economic harm or even emotional distress. (Dobbs, Remedies, Damages—Equity—Restitution, *op. cit. supra,* § 3.3, at p. 152.)

█    Deterrence is an important policy consideration for allowing the maintenance of suits when damages cannot be shown with certainty. " 'To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not and cannot be the law . . . .' " (*Story Parchment Co.* v. *Paterson P. Paper Co., supra,* 282 U.S. at p. 564 [75 L.Ed. at p. 549], citing *Gilbert* v. *Kennedy* (1871) 22 Mich. 117, 130.)

a. *Analogous to intentional interference with prospective business advantage.*

A recognized tort closely analogous to the alleged fact situation before us is the intentional interference with prospective business advantage. █ This tort permits recovery for interference with business relationships or *expectations* even in the absence of a legally binding agreement or where the *expectations* of the parties are only the subject of an unenforceable contract. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 822-823 [122 Cal.Rptr. 745, 537 P.2d 865]; *Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 17 [144 Cal.Rptr. 664, 6 A.L.R.4th 184].)

█    The elements of this cause of action are: (1) An economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of defendant designed to disrupt the relationship; (4) disruption of the relationship; and (5) damages proximately caused by the acts of defendant. (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 827; *Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832, 840-841 [184 Cal.Rptr. 317].)

While it is admitted that the test for intentional interference with prospective business advantage are sometimes vague, it is now widely recognized and has rapidly developed since Supreme Court recognition in *Buckaloo.* (*Lowell* v. *Mother's Cake & Cookie Co., supra,* 79 Cal.App.3d at pp. 17-18; 4 Witkin, Summary of Cal. Law, *op. cit. supra,* § 392, p. 2643.)

Prosser in discussing this particular tort, observed that "a large part of what is most valuable in modern life depends upon 'probable expectancies,' [and] as social and industrial life become more complex the courts must do more to discover, define and protect them from undue interference." (Prosser, Torts, *supra,* § 130, p. 950; *Worldwide Commerce, Inc.* v. *Fruehauf Corp.* (1978) 84 Cal.App.3d 803, 811 [149 Cal.Rptr. 42].)

California courts have adopted Prosser's belief in the importance of "probable expectancies" in several cases dealing with interference with prospective business advantage, requiring only an allegation of a "reasonable probability" that a contract or profit would have been obtained but for the defendant's acts. (*Campbell* v. *Rayburn* (1954) 129 Cal.App.2d 232, 235 [276 P.2d 671]; *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 738 [151 Cal.Rptr. 206]; see also *Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 375 [122 Cal.Rptr. 732].)

Turning again to the instant situation, the Smiths' complaint alleged only that the loss or destruction of the physical evidence had "significantly prejudiced" their case. In a products liability action, doubtless the Smiths suffered "some" damage in the preparation of their case against Abbott Ford. At this point, the amount of damages is uncertain. It may be that the Smiths have pleaded their damages with as much certainty as the nature of the claim will allow.

While intentional spoliation of evidence has not been recognized as a tort heretofore, we conclude that a prospective civil action in a product liability case is a valuable "probable expectancy" that the court must protect from the kind of interference alleged herein. (Prosser, *op. cit. supra,* § 130, at p. 950.)

The fact that the Smiths' case has not yet gone to trial does not preclude a cause of action being stated. *Gold* v. *Los Angeles Democratic League, supra,* 49 Cal.App.3d at page 365, is of particular instruction here. In *Gold,* the plaintiff, an unsuccessful candidate for the office of Los Angeles City Controller, sued several defendants alleging that while he was the endorsed candidate of the Democratic Central Committee, the Democratic League had mailed a pamphlet on the day before the election endorsing another candidate and conveying the false impression that the Democratic League

was an official branch of the Democratic Party. (*Id.*, at p. 371.) Although the appellate court affirmed the sustaining of the demurrers on the violation of the Election Code and fraud, as to the cause of action for *intentional interference with plaintiff's prospective employment,* the court reversed. (*Id.*, at pp. 375-376.) The *Gold* court held that the plaintiff stated an action for interference with his *opportunity* to be elected to office, even though the advantage was merely *prospective.* (*Id.*, at p. 375.)

We find this case similar to the Smiths' situation. Abbott Ford allegedly intentionally interfered with the Smiths' *opportunity* to win their suit. The plaintiff in *Gold* was not required to allege at the pleading stage that he would have won the election but for the defendant's interference, but rather that the defendant had intentionally interfered with his opportunity for a prospective advantage. We see little difference in Abbott Ford's alleged interference with the Smiths' prospective advantage, i.e., proving their product liability suit.

Further, we are cognizant of all the obvious and the sound practical reasons for allowing the Smiths' cause of action for intentional spoliation of evidence to be heard at the same time as their cause of action for personal injury—needless duplication of effort, two trials involving much the same evidence, time and expense imposed on litigants and the judicial system, and a jury uniquely equipped to determine how the Smiths were harmed.

## CONCLUSION

Public policy dictates that the Smiths' interests in their prospective civil litigation are entitled to legal protection against Abbott Ford's alleged intentional spoliation of evidence, even though their damages cannot be stated with certainty.

## DISPOSITION

Therefore the alternative writ is discharged. Let a peremptory writ issue directing the trial court to vacate its order sustaining Abbott Ford's demurrer to the Smiths' eighth cause of action and make a new and different order overruling that demurrer.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied March 1, 1984, and the petition of real party in interest for a hearing by the Supreme Court was denied March 28, 1984.