Virginia M. Ellis BROWN, Appellant,

v.

Rashid S. HAMID, M.D., Respondent.

No. 74850.

Supreme Court of Missouri,
En Banc.

June 29, 1993.

Gwendolyn S. Froeschner, Columbia, for appellant.

Raymond C. Lewis, Columbia, for respondent.

BENTON, Justice.

Virginia M. Ellis[1] sued Dr. Rashid S. Hamid for medical malpractice, specifically (1) prescribing the drug Corgard without knowing her prior medical condition; (2) failing to discontinue or taper Corgard; and (3) failing to diagnose and treat symptoms of congestive heart failure. The jury, after 33 minutes of deliberation, returned a unanimous verdict for Hamid. Ellis appealed to the Court of Appeals, Western District, and then this Court granted transfer. Affirmed.

Ellis asserts as trial court errors: (1) not sanctioning Hamid or defense counsel for unauthorized ex parte contact with her nontreating expert witness; (2) granting Hamid's motion in limine excluding any mention of missing office medical records; and (3) denying leave to amend her petition to add a second count for intentional spoliation or negligent maintenance of her records. Hamid counters that this Court should dismiss the appeal for untimely filing and numerous procedural violations.

*I.*

Ellis first saw Hamid in May 1984 for precautionary blood screening, because her son—already Hamid's patient—had hepatitis. Hamid found that Ellis did not have hepatitis, but that she suffered from hypertension (high blood pressure), diabetes, high cholesterol and low potassium. Hamid recommended that Ellis see her regular physician but since she was already at Hamid's office, she requested that he care for her.

Hamid prescribed potassium, increased her diabetes medication, and also discussed diet, counseling her to lose weight. On subsequent visits, Ellis' blood pressure remained high. Around June 10, 1984, Hamid gave her 42 "office sample" tablets of Corgard with directions to take one a day. This is a minimal dosage of Corgard, a beta blocker, which slows the heart rate and the force of the heart contraction. Ellis took 20 of the tablets in June 1984.

---

1. After filing suit, Plaintiff changed her surname to Ellis.

On June 30, 1984, Ellis visited Hamid's office complaining of chilling, coughing and fever. Because Ellis had some shortness of breath, Hamid did a chest x-ray, which indicated congestion in her lungs. Hamid testified that he urged her to go to the hospital but she refused, so he gave her a shot of antibiotic. That afternoon, Ellis became worse and was admitted to the hospital with congestion, coughing, chilling, and shortness of breath. The admitting diagnosis was bronchitis. Later that evening, based on an x-ray, Hamid diagnosed congestive heart failure and administered Lasix, a diuretic. Ellis improved within hours. Although Corgard can aggravate congestive heart failure, Hamid continued to administer the drug, fearing that an abrupt halt could cause a heart attack. Corgard was discontinued on July 3, 1984, by a consulting specialist in cardiology. After a seven-day hospitalization, Ellis was discharged, and has since been disabled, unable to work.

## II.

■ Before this Court and the court of appeals, Hamid urges dismissal of the appeal because of numerous procedural deficiencies in filing and briefing. Hamid first attacks the court of appeals' order granting Ellis leave to appeal out of time. This Court will not disturb a special order of the court of appeals absent an abuse of discretion, which does not appear here. *Rule 81.07; cf. Frankoviglia v. Centerre Bank of Branson,* 791 S.W.2d 7, 9 (Mo.App.1990) (special order may be granted only if motion is filed within six months after final judgment).

Next, Hamid emphasizes defects on appeal, such as: errors in appellant's brief, the abbreviated transcript, an incomplete legal file, and a statement of facts claimed to be unfair and not concise. Hamid, in fact, filed substantial supplements to the transcript.

■ Cases should be heard on the merits if possible, construing the court rules liberally to allow an appeal to proceed. *Sherrill v. Wilson,* 653 S.W.2d 661, 663 (Mo. banc 1983). While not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by the rule violations. *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 55 (Mo. banc 1981).

■ The briefs in this case delineate the issues, citing authority and argument from which the issues can be decided. Eventually, an adequate transcript and legal file coalesced. In this case, the alleged deficiencies do not prevent review on the merits. *See Thummel v. King,* 570 S.W.2d 679, 690 (Mo. banc 1978).

## III.

On April 25, 1989, during early discovery, Hamid's attorney telephoned Ellis' expert at his office in the Medical Center. The expert, a doctor and medical school professor, never treated Ellis in the role of physician-patient. Hamid's attorney opened the conversation by stating that his purpose was to ascertain whether the expert "authored" a one-page opinion of the case. Ellis had responded with this one-page opinion, below the expert's name, to the standard interrogatory asking the name of each expert witness and the general nature of the expert's subject matter. *See Rule 56.01(b)(4)(a).* Ellis' expert confirmed that the interrogatory response included parts of his four-page review. During the conversation, Hamid's attorney claimed that a distinguished, retired physician had examined the case and found no malpractice, that a doctor's mistake did not necessarily constitute medical malpractice, and that Hamid's attorney had defended the expert's colleague and had used another colleague as an expert in another case. Hamid's attorney did apologize several times, saying he did not want to be telling the expert what to do. Hamid's attorney asked if the expert were going to testify; the expert answered that he would be reviewing more data and had not yet decided. The expert believed that the call was not "a big deal" but also that the real reason for the 7–to–10–minute call was to "dissuade" him from testifying as an expert by exerting "social pressure."

Ellis argues that the ex parte contact was "improper," citing *State ex rel. Woytus v. Ryan*, 776 S.W.2d 389 (Mo. banc 1989), and *McClelland v. Ozenberger*, 805 S.W.2d 264 (Mo.App.1991). Both *Woytus* and *McClelland* involved treating physicians. *Brandt v. Pelican*, 856 S.W.2d 658 (Mo. banc 1993) clarifies the rules governing ex parte contacts in that circumstance. These rules apply, however, only when there exists a physician-patient relationship.

In the present case, while the expert witness is a doctor, he never treated Ellis. Discovery of this doctor's opinions is governed by the rules for discovery of an expert's opinions, rather than by the rules for discovery of a "fact" witness. The question thus becomes whether, as a means of informal discovery, opposing counsel may contact ex parte an expert retained by the other side.

Rule 56.01(b) recognizes two roles that a retained expert can play in a case. First, an expert can be a "consultant," giving opinions to advise the legal team. *Rule 56.01(b)(3)*. Second, an expert can be a trial witness. *Rule 56.01(b)(4)*.

Rule 56.01(b)(4)(a) requires a party to disclose, upon interrogatory, the names of its expert witnesses. Until such an interrogatory, retained experts are consultants; and their written opinions are work product. Under Rule 56.01(b)(3), work product enjoys a "qualified immunity" from discovery. *State ex rel. Missouri Highways & Transportation Commission v. Legere*, 706 S.W.2d 560, 566 (Mo.App.1986). This immunity is absolute with regard to the mental impressions, conclusions, or opinions of consultants. *Rule 56.01(b)(3)*.

■ A party waives any work product immunity for a consultant by giving the work product to the other side, or by authorizing the consultant to talk to the other side. If the consultant is also a witness, this immunity is waived by formal discovery. The identification of a retained expert as a witness begins the process of waiving this immunity. At the time of identification, a party need only disclose the general subject matter of the testimony. *Rule 56.-01(b)(4)(a)*. If the expert is deposed under Rule 56.01(b)(4)(b), further information is disclosed, constituting a waiver of the "work product immunity." While the disclosure may only be compelled by formal discovery, which is limited by Rule 56.-01(b)(4), nothing in the Rules forbids a party from using informal discovery—including ex parte contacts—to discuss matters previously disclosed.

■ In the present case, while the ex parte contact occurred before the deposition, significant information was disclosed by the one-page summary of the expert's opinion included with Ellis' answer to the interrogatory seeking the expert's name. To the extent that the ex parte contact concerned this summary, it was within the scope of the waiver by that disclosure.

■ The rest of this ex parte contact could be perceived as an attempt to pressure the expert not to testify. In both formal and informal discovery, the Rules do not prohibit a party from trying to convince an expert that an opinion is erroneous, and should be reconsidered in light of particular facts or in light of the opinions of other experts. However, when a party or an attorney emphasizes his or her connections with an expert's colleagues or superiors—especially when unrelated to the case—it may constitute a form of pressure on an expert's decision to testify, and implies the possibility of indirect benefits or punishments from that decision. In some circumstances, such pressure may constitute a violation of an attorney's ethical duties or the criminal law. *See § 575.270.1 RSMo 1986; Rules of Professional Conduct* (Rule 4 of the Missouri Rules of Court), *Rule 3.4*.

In its discretion, a trial court may fashion an appropriate remedy to minimize the effect of an improper part of an ex parte contact. Appellate courts review the decision of the trial court solely for abuse of discretion, and should reverse only when prejudice to the complaining party is shown. *Rule 84.13(b); Neavill v. Klemp*, 427 S.W.2d 446, 448 (Mo.1968) Ellis has shown no prejudice. The expert was not

dissuaded, did testify at trial, and did not change his testimony after the ex parte contact. If anything, the expert testified in a more assured and convincing manner after the ex parte contact. Hamid's attorney gleaned no significant information concerning trial strategy or other confidential material. The trial court expressly found that Ellis suffered no prejudice from the ex parte conversation. The trial court did not err in failing to sanction Hamid or his attorney.

## IV.

On March 25, 1985, Ellis' attorney, by letter enclosing a signed release, requested Hamid to "forward" Ellis' medical records. On June 25, 1986—15 months later—Hamid's attorney, by letter, requested the return of the "original" records, noting that no copy was in Hamid's office. On September 17, 1986, Ellis' attorney responded that she had, in fact, never received the records. This stalemate begat a motion to produce the records, a subsequent motion for sanctions when the records were not produced, at least two hearings in the trial court, and voluminous suggestions and arguments.

On appeal to this Court, Ellis abandons her claim for sanctions for failure to produce her medical records. However, Ellis maintains that the trial court erroneously granted Hamid's motion in limine prohibiting any mention that her office medical records, essentially progress notes, were missing.

The trial judge, by pre-trial order, specifically prohibited any offer of proof, in the presence of the jury, concerning the missing records. Immediately before trial, Ellis' attorney stated her intent to call three witnesses to testify as an offer of proof about missing medical records. Hamid's attorney recommended an "oral offer of proof," stating that Ellis need not "call a bunch of witnesses to make her offer of proof." Ellis' attorney, by narrative, then indicated the testimony of the witnesses: contrary to Hamid's deposition statement that he never saw patient information requests and they were processed only by his staff, Hamid's standard office procedure required all record requests to go directly to him, with his staff never handling such requests. Both sides filed affidavits from Hamid's staff. The trial judge declined to reconsider the order in limine, as late as the hour before trial.

■ Hamid contends that a motion in limine is an interlocutory order, not reviewable on appeal, because the trial court may later change or modify the ruling. *Ball v. American Greetings Corp.*, 752 S.W.2d 814, 824 (Mo.App.1988). A motion in limine is a "preliminary expression of the court's opinion as to the admissibility of the evidence." *Annin v. Bi–State Dev. Agency*, 657 S.W.2d 382, 385 (Mo.App.1983). Hamid then argues that Ellis must have made an offer of proof *during trial* regarding the missing records, in order to appeal. However, Ellis made a sufficient offer of proof, in view of the ruling not to raise the missing-medical-records issue during trial. The trial court and opposing counsel clearly understood the evidence offered and its relevancy and materiality, resulting in an adequate record for appellate review. *See State ex rel. State Highway Comm'n v. Northeast Building Co.*, 421 S.W.2d 297, 300 (Mo. banc 1967); *Stipp v. Tsutomi Karasawa*, 318 S.W.2d 172, 175 (Mo. banc 1958).

Addressing the merits, the issue is the admissibility of evidence that the records were missing. At trial, Ellis wanted to show "baseline physical data," the status of her health when she initially saw Hamid and the drastic change after taking Corgard. In the absence of Hamid's progress notes, Ellis resorted to the previous infrequency of her absenteeism from work, 1979 and 1984 hospital records, a stipulation as to the administration of Corgard (including the dosage recommended and taken by Ellis), laboratory reports and insurance claims data from Hamid's office, and her disability after seeing Hamid.

■ The trial court ruled that the issue of the missing medical records was "a spurious and superfluous non-issue." When a motion in limine is sustained, its propriety is judged by the admissibility or inadmissibility of the excluded evidence.

**56**

*Guthrie v. Missouri Methodist Hospital,* 706 S.W.2d 938, 941 (Mo.App.1986). Relevant and material evidence may not be excluded solely because it tends to prejudice the jury against a party. *Jablonowski v. Modern Cap Mfg.,* 312 Mo. 173, 279 S.W. 89, 97 (Mo. banc 1925). The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991). The trial court's ruling on admissibility of evidence is accorded substantial deference and will not be disturbed, absent an abuse of discretion. *Id.*

In this case, the trial judge concluded that the potential for jury confusion and the introduction of collateral issues justified the exclusion of evidence. The "missing records" issue was clearly a collateral issue. "Exclusion of evidence of collateral matters is demanded when the evidence introduces many new controversial points and a confusion of issues would result...." *Jones v. Terminal R.R. Ass'n of St. Louis,* 242 S.W.2d 473, 477 (Mo. 1951). The trial judge's concern was precisely this: "We're here to try a medical malpractice case, not try to figure out what happened to some records."

The potential for confusion was great. The parties intensely dispute what actually happened to the records. From the affidavits and testimony at the various hearings on this issue, the trial court found it "unknowable" what happened to the records.

The trial court did not abuse its discretion in excluding any evidence of the missing medical records.

### V.

On February 26, 1990—over three years after filing the original medical malpractice petition, but eight months before trial— Ellis requested to add a second count of intentional spoliation or negligent maintenance of her medical records. The trial judge denied leave, finding that Missouri does not recognize this cause of action. Ellis argues that Missouri should.

*a. · Intentional Spoliation*

Several jurisdictions have a cause of action for intentional spoliation of evidence, though a greater number of jurisdictions do not. John F. Medler, Jr., *Spoliation Of Evidence In Civil Cases,* 39 St. Louis B.J. 14, 20–21 (1993); Thomas G. Fischer, *Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, As Actionable,* 70 A.L.R.4th 984 (1989).

The first jurisdiction to recognize this tort was California, analogizing to the tort of intentional interference with prospective business advantage. *Smith v. Superior Court for County of Los Angeles,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829, 836 (1984). Ellis relies heavily on *Smith.* In *Smith* the defendant specifically promised to retain the evidence knowing of the potential lawsuit, and then lost or destroyed the evidence. Without the missing evidence, the plaintiffs in *Smith* were completely foreclosed from pursuing a personal injury claim. There was no dispute in *Smith* that the defendants lost or destroyed the evidence.

This case is not similar to *Smith.* Here, the trial judge specifically found no evidence that Hamid destroyed the records, finding "unknowable" what happened to them since Hamid claimed to mail the records but Ellis' attorney denied receipt. This case presents no basis to recognize a tort of intentional spoliation of evidence.

In addition to the crime of tampering with evidence,[2] Missouri has, for over a century, enforced an evidentiary spoliation inference, *omnia praesumuntur contra spoliatorem* (all things are presumed against a wrongdoer). *Pomeroy v. Benton,* 77 Mo. 64, 86 (1882); Brian E. Howard, *Spoliation of Evidence,* 49 J.Mo. Bar 121 (1993). Leading proponents for a tort of intentional spoliation recognize Missouri's role in developing the spoliation doctrine in evidence law. Jamie S. Gorelick et al., *Destruction of Evidence,* § 1, at 7 (1989). The evidentiary spoliation doctrine applies when there is intentional destruc-

2. § 575.100 RSMo 1986.

tion of evidence, indicating fraud and a desire to suppress the truth. *Moore v. General Motors,* 558 S.W.2d 720, 733 (Mo. App.1977). If applicable, destruction of evidence without a satisfactory explanation gives rise to an inference unfavorable to the spoliator. *Garrett v. Terminal R. Ass'n of St. Louis,* 259 S.W.2d 807, 812 (Mo.1953). In this case, the trial judge found no proof of such intentional destruction, fraud, or suppression, and his ruling is not an abuse of discretion.

### b. *Negligent Maintenance*

Ellis also claims negligent maintenance of her medical records. The threshold issue is whether Hamid has an independent duty to maintain medical records on Ellis. *Cf. Koplin v. Rosel Well Perforators, Inc.,* 241 Kan. 206, 734 P.2d 1177, 1179 (1987). Ellis' claim is not that the negligent maintenance adversely affected her medical treatment. Rather Ellis alleges "substantial hindrance in establishing her prima facie malpractice action."

Invoking the logic of a Florida case,[3] Ellis alleges that § 191.227 RSMo Supp. 1992 and a case interpreting it[4] "pave the way for a cause of action where records are destroyed and a plaintiff's lawsuit impaired." In fact, § 191.227 was not enacted until 1988—long after the records were requested in March 1985 and the lawsuit filed in June 1986. *House Bill 925, § 1, Laws Mo.1988,* at p. 637. However, even before the enactment of § 191.227, a patient had a common law right to inspect and copy his or her medical records. *Thurman v. Crawford,* 652 S.W.2d 240, 242 (Mo.App.1983).

■ Ellis, however, misinterprets and over-generalizes the duty. The Missouri cases, statutes, and common law address a physician's duty to let the patient inspect and copy medical records. They do not create an independent duty to *maintain* medical records. To be sure, in another case, failure to maintain medical records may contribute to, or constitute, medical malpractice. A medical malpractice action is an adequate remedy for Ellis' injury. There is no need, in this case, to recognize an independent tort of negligent maintenance of medical records. *Cf. Miller v. Montgomery County,* 64 Md.App. 202, 494 A.2d 761, 768 *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985); *La Raia v. Superior Court,* 150 Ariz. 118, 722 P.2d 286, 288–90 (1986); Theresa M. Owens, Note, *Should Iowa Adopt the Tort of Intentional Spoliation of Evidence in Civil Litigation?,* 41 Drake L.Rev. 179, 191–192 (1992).

In this case, Ellis was able to pursue her claim of medical malpractice without the office medical records. She was able to present her case to the jury and it was there she lost. The facts of this case do not require creation of a new cause of action.

The judgment of the trial court is affirmed.

ROBERTSON, C.J., HOLSTEIN, THOMAS, PRICE and LIMBAUGH, JJ., and GERALD SMITH, Special Judge, concur.

COVINGTON, J., not sitting.

---

**3.** *Bondu v. Gurvich,* 473 So.2d 1307, 1313 (Fla. App.1984).

**4.** *Wear v. Walker,* 800 S.W.2d 99 (Mo.App.1990).