Jaynee WILL, Appellant,

v.

**PEPOSE VISION INSTITUTE,
P.C., Respondent.**

ED 103949

Missouri Court of Appeals,
Eastern District,
DIVISION FOUR.

Filed: May 23, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied July
13, 2017

Motion for Transfer to Supreme Court
Denied October 5, 2017

Leonard P. Cervantes, Jennifer Suttmoeller, 1007 Olive Street, 4th Floor, St. Louis, MO 63101, for appellant.

Philip L. Willman, Teresa M. Young, 800 Market Street, 11th Floor, St. Louis, MO 63101, for respondent.

Gary M. Gaertner, Jr., Judge

## Introduction

Appellant Jaynee Will (Will) appeals the judgment entered upon the jury's verdict in favor of Respondent Pepose Vision Institute, P.C. (Pepose), in Will's medical malpractice suit against Pepose. We affirm.

## Background

Will has a family history of retinal detachment, and she regularly obtained eye examinations from retinal specialists. In November of 2001, Will's retinal specialist, Dr. Nancy Holekamp, diagnosed Will with high myopia, lattice degeneration, and posterior vitreous detachment in both eyes. These conditions placed Will at greater risk for retinal detachment than the general population. At the time of Will's diagnoses, Dr. Holekamp did not recommend immediate treatment, but instead that Will be examined again in two years.

In October of 2003, Will underwent bilateral Lasik surgery at Pepose, performed by Dr. Jay Pepose. Dr. Mujtaba Qazi, a refractive surgeon with Pepose, performed both Will's pre- and post-operative examinations. Will returned to Pepose twice more in 2003 for follow-up examinations. Over one year later, on February 1, 2005, Dr. Qazi performed a general ophthalmology examination on Will's eyes, which included a retinal examination. Dr. Qazi documented on that date that Will's retinas were normal.

On March 23, 2005, Will noticed a large floater making a line across her right eye. Will went to Barnes Retina Institute the next morning, and she was diagnosed with a retinal detachment and giant retinal tear in her right eye. She had vitrectomy surgery to repair the retinal detachment that same day. Will unfortunately experienced a complication from the surgery that ultimately resulted in the loss of her right eye in 2011. Will also underwent a preventative procedure in her left eye to lessen the risk of retinal detachment in that eye, which was successful.

In 2011, Will filed a medical malpractice suit against Pepose, alleging both Dr. Pepose and Dr. Qazi failed to conform to the standard of care in treating her, which caused or contributed to cause the injury

to her right eye. After a jury trial, the jury found in favor of Pepose, but the trial court granted Will's motion for new trial, finding the verdict was against the weight of the evidence. This Court affirmed on appeal. Will v. Pepose Vision Institute, P.C., 400 S.W.3d 864 (Mo. App. E.D. 2013). The second trial took place in September of 2015, and the jury again returned a verdict in favor of Pepose. This appeal follows.

## Discussion

Will raises two points on appeal. First, she argues that certain statements by Pepose's counsel during closing argument misrepresented the evidence, and that the trial court plainly erred in allowing such argument. Second, Will argues that the trial court abused its discretion in excluding evidence of witness tampering by Pepose, which prejudiced Will. We discuss each in turn.

## Point I

Will argues that certain statements by Pepose's counsel during closing argument misled the jury, and thus the trial court plainly erred in allowing such argument. We disagree.

 Will concedes this point was not preserved because her counsel failed to object to these statements during Pepose's closing argument at trial. She requests we review for plain error under Rule 84.13(c).[1] "The general rule is that where a party does not object to argument he deems improper he may not thereafter object on appeal; and the plain error rule may be resorted to only in those exceptional circumstances when the reviewing court deems that manifest injustice or miscarriage of justice has occurred." City of Maryland Heights v. Heitz, 358 S.W.3d 98,

113 (Mo. App. E.D. 2011) (quoting Goodman v. Firmin Desloge Hospital, 540 S.W.2d 907, 917 (Mo. App. 1976)). Courts have an absolute duty to "restrain and purge" misstatements of law during closing argument. Heshion Motors, Inc. v. W. Internat'l Hotels, 600 S.W.2d 526, 534 (Mo. App. W.D. 1980). However, "it is equally recognized that the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and the issues drawn by the instructions ... he is permitted wide latitude in his comments." Id.

Here, Will argues that Pepose's counsel misrepresented the evidence relating to the standard of care that was applicable to Dr. Qazi. There were two sets of guidelines for eye examinations in evidence, called Preferred Practice Patterns (PPP). One of the PPP's was entitled "Comprehensive Adult Medical Eye Evaluation," and it provided that "[o]ptimal examination of the peripheral retina requires the use of the indirect ophthalmoscope or slit-lamp fundus biomicroscopy." These are the tools Dr. Qazi used when performing Will's eye examination in February of 2005. However, another PPP in evidence, entitled "Posterior Vitreous Detachment, Retinal Breaks, and Lattice Degeneration" (PVD PPP), called for use of an additional instrument, called a scleral depressor, when examining a patient's retina. Will's theory at trial was that Dr. Qazi's care during his February 2005 examination fell below the standard of care because he failed to use a scleral depressor to examine the periphery of her retinas. Will argued this caused Dr. Qazi to miss seeing the lattice degeneration in both eyes and mistakenly diagnose her retinas as normal.

During closing argument, Pepose's counsel noted that Pepose's expert witness, Dr.

---

1. All rule references are to Mo. R. Civ. P. (2017), unless otherwise indicated.

Charles Wilkinson, testified that the PVD PPP contains "guidelines for retinal specialists, and those guidelines apply when a patient has symptoms" of posterior vitreous detachment. Pepose's counsel argued Dr. Qazi is not a retinal specialist, but a refractive surgeon, and that there was no expert testimony to the effect that Dr. Qazi was required to use a scleral depressor when he examined Will's retinas.

■ We do not see any indication of manifest injustice or a miscarriage of justice in the trial court's failure to *sua sponte* intervene in this closing argument. The parties disagreed as to which PPP applied to Dr. Qazi and whether he should have used a scleral depressor during Will's February 2005 eye examination, and each party presented conflicting evidence on this issue. The parties had an opportunity to cross-examine each expert that testified regarding this issue. Pepose's counsel argued that its experts were more persuasive on this issue, which is the purpose of closing argument. Correspondingly, Will's counsel had an opportunity to argue, and in fact did argue, that the PVD PPP applied to Dr. Qazi and therefore he negligently failed to use the scleral depressor. The jury also had access to the PPP's themselves, both of which contained statements that they were intended for use by "ophthalmologists." It was up to the jury to determine whether they believed the expert testimony regarding whether the PVD PPP applied only to retinal specialists or also to Dr. Qazi, and whether that issue ultimately determined liability.

There is no indication in the record that Pepose's counsel misstated the law or strayed beyond the evidence during closing argument. See Heshion Motors, Inc., 600 S.W.2d at 534. The trial court did not plainly err in failing to *sua sponte* intervene during Pepose's counsel's closing argument in this respect. Point denied.

## Point II

Will argues that the trial court abused its discretion in excluding evidence of improper attempts to influence Will's expert witness' testimony and that this abuse of discretion prejudiced Will. We reluctantly disagree.

■ The admission or exclusion of evidence is a matter within the trial court's "considerable discretion." Cox v. Kan. City Chiefs Football Club, Inc., 473 S.W.3d 107, 114 (Mo. banc 2015) (internal quotation omitted). A trial court abuses such discretion when the ruling is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate, consideration." Id. (internal quotation omitted). "By both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the merits of the action." Id. (internal quotation omitted).

Here, Will argues that the trial court abused its discretion in excluding evidence of Pepose's attempts to influence the testimony of Dr. Michael Sulewski, one of Will's expert witnesses. Will sought to introduce evidence that Dr. Pepose had contacted Dr. Stuart Fine, the former chair of the Ophthalmology Department at the University of Pennsylvania Medical School. Dr. Fine had hired Dr. Sulewski and had been Dr. Sulewski's superior at the University of Pennsylvania Medical School for 18 years. Dr. Fine was also involved in the decision-making process regarding Dr. Sulewski's potential promotion. After speaking with Dr. Pepose, Dr. Fine contacted Dr. Sulewski. Will argued this constituted an indirect attempt by Dr. Pepose to influence Dr. Sulewski's testimony.

Will offered Dr. Sulewski's deposition testimony regarding this incident:

Q. What did [Dr. Fine] say to you?

A. He was just asking about my role in the case.

. . .

Q. Did he tell you that Dr. Pepose had called him and spoke to him about this case?

A. Yes.

. . .

Q. . . . Did you feel uncomfortable when he called you to talk about this?

A. Yes.

. . .

Q. Did he tell you that he had some understanding about the facts of the case that had been related to him by Dr. Pepose?

. . .

A. It appeared so.

Q. Okay. And did you tell him that there were other facts that he was not aware of that caused you to think this was a meritorious case?

A. Well, I may have said that, but I did not speak about the facts of the case in detail. . . . I just did not feel comfortable discussing the case with someone not involved in the case.

. . .

Q. Did you feel that this could have some adverse effect on you?

. . .

[A.] No. I wasn't concerned about that.

Q. Did you feel that Dr. Fine was trying to dissuade you or discourage you from serving as a witness in this case?

. . .

[A.] I don't know.

. . .

Q. And when you gave your deposition, was that on your mind that you had had this conversation with Dr. Fine?

A. I don't know if it was on my mind.

Q. Okay. Were you feeling uncomfortable during the deposition because of the conversation with Dr. Fine?

A. Again, it's hard for me to recall whether it had any impact on me.

Will moved for sanctions and asked the trial court to admit this deposition testimony of Dr. Sulewski so the jury could hear the evidence regarding potential witness tampering. Pepose's counsel argued that Dr. Pepose denied asking Dr. Fine to call Dr. Sulewski or directing Dr. Fine to pressure Dr. Sulewski in any way. The trial court denied Will's motion, finding that there was no evidence Dr. Pepose asked Dr. Fine to call Dr. Sulewski and thus no evidence to support sanctions against Pepose.

■ Will argues that this evidence should have come in both as impeachment evidence and as substantive evidence of Pepose's belief that its defense was weak. While we find no Missouri case law directly addressing this issue in a civil case, federal precedent lends some guidance. "It is generally held that, in a civil case, evidence that a litigant, or his agent, has attempted to influence or suppress a witness is receivable as an admission or as an indication of the litigant's consciousness that his case is weak or unfounded or that his claim is false or fraudulent." Great Am. Ins. Co. v. Horab, 309 F.2d 262, 264 (8th Cir. 1962).

While federal precedent is not binding on this Court, we conclude the trial court should have admitted this evidence here. Though Dr. Pepose denied that he asked Dr. Fine to contact Dr. Sulewski on his behalf, parties generally do not admit to such impermissible conduct. Moreover, though Dr. Sulewski never stated the con-

tact by Dr. Fine affected his deposition testimony, he was hesitant to give a definite answer. There was also evidence that Dr. Sulewski worked in close proximity to Dr. Fine, and Dr. Fine was involved in decisions regarding Dr. Sulewski's future career advancement. Thus, Dr. Sulewski was likely hesitant to directly speak out against Dr. Fine. Ultimately, the motivation for Dr. Fine's actions and what exactly took place should have been questions for the jury to determine based on hearing all the evidence surrounding this contact.

■ However, our question is not whether this evidence was admissible, but ultimately whether the trial court's error materially affected the merits of the action. See Cox, 473 S.W.3d at 114. While we conclude the trial court did abuse its discretion by failing to admit this evidence; based on Missouri Supreme Court precedent, we conclude it does not require reversal under the circumstances here.

In Brown v. Hamid, the Missouri Supreme Court considered whether the plaintiff was prejudiced by the trial court's exclusion of evidence of the defendant's counsel's ex parte contact with the plaintiff's expert witness. 856 S.W.2d 51 (Mo. banc 1993). The plaintiff had filed a medical malpractice suit against the defendant doctor, and the doctor's counsel called the plaintiff's expert witness to confirm whether the expert had authored an opinion of the case produced during discovery. Id. at 53. During the course of the conversation, defense counsel told the expert that another physician had reviewed the case and found no malpractice, and that defense counsel also knew the expert's colleagues from working with them on other cases. Id. Defense counsel then apologized and said he did not want to tell the expert what to do. Id. "The expert believed that the call was not 'a big deal' but also that the real reason for the 7-to-10-minute call was to 'dissuade' him from testifying as an expert by exerting 'social pressure.' " Id.

The appellant in Brown argued that the trial court should have sanctioned the defense at trial because defense counsel intended to pressure the expert witness not to testify. Id. at 54. The Missouri Supreme Court noted that an attorney's emphasis on connections with an expert's colleagues or superiors may constitute pressure on a witness, and thereby constitute a violation of the attorney's ethical duties or the criminal law. Id. Ultimately, however, the Missouri Supreme Court determined that the appellant was unable to show prejudice: "The expert was not dissuaded, did testify at trial, and did not change his testimony after the ex parte contact.... [Defense counsel] gleaned no significant information concerning trial strategy or other confidential material." Id. at 54-55.

Similarly, Will is unable to demonstrate prejudice here. Unlike the expert in Brown, who believed the purpose of the call was to dissuade him from testifying, Dr. Sulewski stated that he did not know the purpose of the call, and though it made him uncomfortable, it did not affect his testimony. Dr. Sulewski did not discuss the details of the case with Dr. Fine, and thus Pepose did not glean any confidential information from this contact. Dr. Sulewski testified to his opinion regarding Dr. Qazi's performance at both trials in this case, and both times the jury returned verdicts for Pepose. Here, the clear Missouri Supreme Court precedent prevents us from granting a third trial, even though we believe the evidence of Dr. Fine's phone call to Dr. Sulewski should have come in. Point denied.

### Conclusion

The trial court did not plainly err by refraining from intervening in Pepose's counsel's closing argument because the ar-

gument was based on evidence before the jury. Additionally, though we find the trial court abused its discretion in failing to admit evidence that Dr. Fine contacted Dr. Sulewski, Will has not shown she was prejudiced by the trial court's exclusion of this evidence at trial. The judgment of the trial court, is affirmed.

James M. Dowd, P.J., concurs.

Kurt S. Odenwald, J., concurs.