573 So.2d 24 (1990)
Marcia MILLER, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 88-2806.
District Court of Appeal of Florida, Third District.
December 18, 1990.
*25 Arthur M. Garel and Jeffrey A. Jacobs, Miami, for appellant.
Barnett, Clark and Barnard and Richard M. Nelson and James K. Clark, Miami, for appellee.
Before HUBBART, FERGUSON and GERSTEN, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
Marcia Miller commenced this contract action against Allstate Insurance Company alleging a breach of promise to return a wrecked automobile which she needed as evidence in a planned products liability action against the manufacturer. Agreeing with Allstate that its promise to preserve the evidence did not create a legally enforceable obligation, or that the agreement was unenforceable because damages were not reasonably certain, the trial court, on stipulated facts, entered a final judgment adverse to Miller on the liability issue.
Marcia Miller and her passenger were severely injured when Miller's new car crashed into a wall. The cause of the crash, according to Miller, was that the vehicle's accelerator stuck, causing an unavoidable collision with a retaining wall. The automobile was a total loss. While Miller was recuperating in the hospital, her father, who is an attorney, contacted Allstate, her automobile insurer, and informed an agent, Kenneth Malkin, that Miller wanted to retain possession of the automobile in order to have it examined by an expert for defects. He was of the opinion that his daughter had a products liability claim against the manufacturer. Malkin told Miller and her father that Allstate wanted temporary possession of the car because they also planned to have an expert examine it for defects as they anticipated that the passenger injured in the accident would file a claim against Allstate.
*26 Eventually the parties reached an agreement whereby Miller relinquished possession of the car to Allstate to prepare for its defense to a claim by the passenger. In exchange, Allstate promised to preserve the car and to make it available for inspection by Miller's experts. The existence of the oral agreement is not disputed. Before any expert examination was performed, however, Allstate, in breach of the agreement, sold the car to a salvage yard where it was disassembled and disposed of. Miller sued Allstate alleging that, as a result of Allstate's breach of the agreement to preserve the wrecked automobile for expert inspection, she was denied the opportunity to maintain a products liability action against the manufacturer.
The court held a special proceeding where Miller's witness, a safety engineer, testified that, although the collision was most likely caused by a defect, he would be unable to give an expert opinion in the case without examining the automobile. Allstate moved for a directed verdict on two grounds: 1) Florida law does not recognize a cause of action in contract for damages based on the denial of an opportunity to prove a products liability case; and 2) even if such a cause of action existed, in light of the holding in Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981)  that a products liability plaintiff may establish a prima facie case for jury consideration on circumstantial evidence  Miller was not denied an opportunity to pursue her case. The court directed a verdict in favor of Allstate.

CAUSE OF ACTION FOR WRONGFUL DISPOSITION OF EVIDENCE
This court has previously recognized the existence of a tort cause of action for negligent failure to preserve evidence for civil litigation. In Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984), rev. denied, 484 So.2d 7 (Fla. 1986), we held that a wife, whose husband died during surgery, was entitled to bring an action for negligent failure to preserve evidence against a hospital and its physicians where the hospital misplaced records which were indispensable to the plaintiff's medical malpractice action. Cited in Bondu is a line of cases from other jurisdictions that were among the first to recognize a tort cause of action for negligent failure to preserve evidence needed for civil litigation.
A leading case on the issue of spoliation of evidence is Smith v. Superior Court, 151 Cal. App.3d 491, 198 Cal. Rptr. 829 (1984). In Smith, the defendant's van was towed to an automobile dealer following an accident. After promising plaintiff's attorney that it would maintain the vehicle pending further investigation by the plaintiff's experts, the dealer lost or destroyed the evidence. Without the physical evidence, Smith was unable to pursue her products liability claim. She sued the dealer alleging tortious interference with a prospective civil action by spoliation of evidence, breach of contract, and promissory estoppel. The trial court dismissed the tort claim,[1] ruling that it was not a recognized cause of action. The appellate court reversed.
Analogizing the intentional tort of spoliation of evidence to the tort of intentional interference with a prospective business advantage, the court observed, on the way to its holding, that "a prospective civil action in a products liability case is a valuable `probable expectancy' that the court must protect" from interference, and that the defendants had interfered with the plaintiff's opportunity to prove her lawsuit. Smith, 151 Cal. App.3d at 502, 198 Cal. Rptr. at 837. Other cases have expressly or implicitly recognized the existence of a tort cause of action for destruction of evidence where all the traditional tort elements were present.[2]

*27 CAUSE OF ACTION IN CONTRACT FOR SPOLIATION OF EVIDENCE
Conceding, in light of the considerable authority which includes Florida cases, that the law recognizes a tort cause of action for the destruction of evidence, Allstate argues, generally, that Miller's election of a contract remedy is fatal. We disagree. An action in contract differs from an action in tort in that the former is based on the breach of a duty imposed by agreement while a tort action is based on the breach of a duty imposed by law. Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932). In a contract action the threshhold question is whether the defendant breached a promise which the law will enforce, or the performance of which the law in some way recognizes as a duty. Restatement (Second) of Contracts, § 1, at 5 (1981).
Whether a cause of action should be pursued in contract or tort is not dictated by the character of the act giving rise to the injury, but instead, it is the character of the duty breached which determines which cause of action should be maintained. 1A C.J.S. Actions § 85, at 486 (1985). Where the parties have a contract, and the same act or transaction constitutes both a breach of the agreement, express or implied, and a tort, the tort may be waived and the injured party may sue on the contract. Gay v. Southern Builders, Inc., 66 So.2d 499 (Fla. 1953); Doyle v. City of Coral Gables, 159 Fla. 802, 33 So.2d 41 (1948).
In Bondu, the defendant physician and hospital owed a duty to the plaintiff, imposed by statute and administrative regulation, to make and maintain medical records. We held there that the complaint for negligent failure to preserve medical records stated a cause of action because it was clear that the plaintiff's interests were entitled to legal protection against the conduct of the defendants. In this case the insurer owed a duty to the plaintiff, imposed by a contract, to preserve evidence essential to a civil litigation. As in Bondu, we conclude that the plaintiff's interests are entitled to legal protection against the defendant's conduct. That the duty arises from a valid contract, rather than a statute or administrative regulation, is no basis for a different result.[3]

UNCERTAINTY OF DAMAGES
Allstate argues further, specifically, that its agreement with Miller should not be recognized as imposing a legal duty because of the uncertainty of damages. Although there is a requirement for certainty of damages in a contract action, Restatement (Second) of Contracts §§ 351, 352 comment a (1981); C. McCormick, Damages § 31, at 105 (1935), the requirement may be met, according to the old rule from Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854), by evidence of what damages were in the contemplation of the parties at the time the contract was made. See Life Investors Ins. Co. v. Johnson, 422 So.2d 32 (Fla. 4th DCA 1982). Under the certainty rule, which applies in both contract and tort actions, recovery is denied where the fact of damages and the extent of damages cannot be established within a *28 reasonable degree of certainty. Restatement (Second) of Contracts § 352 (1981); Restatement (Second) of Torts § 912 (1982); McCall v. Sherbill, 68 So.2d 362 (Fla. 1953); Farrington v. Richardson, 153 Fla. 907, 16 So.2d 158 (1944). The sometimes harsh results of the application of the rule of certainty, referred to as the "all-or-nothing" approach, has led courts and scholars to criticize the rule and carve out exceptions and modifying doctrines.[4]See generally C. McCormick, supra at 101; Farnsworth, Legal Remedies for Breach of Contract, 70 Columbia L.Rev. 1145, 1214-15 (1970). The court in Smith v. Superior Court, 151 Cal. App.3d 491, 198 Cal. Rptr. 829 (1984), applied the equity exception.
Recognizing the certainty element of damages as the most troubling aspect of an action for intentional spoliation of evidence, the Smith court noted that the underlying products liability case had not yet gone to trial and it was possible that the plaintiff could prove her case through other means.[5] Noting that although damages usually must be established within a reasonable degree of certainty, the court reasoned, nevertheless, that when the difficulty in establishing damages is caused by the defendant, he should bear the risk of uncertainty that his own wrong created.[6] Concluding that the plaintiff suffered "some" damage in preparing her product liability case, the court permitted recovery even though the damages could not be stated with certainty. Smith, 151 Cal. App.3d at 503, 198 Cal. Rptr. at 837. Likewise, in Bondu, we held that the plaintiff was damaged when the hospital failed to furnish hospital records causing her to lose a medical negligence lawsuit.[7] The difficulty in assessing damages in Bondu was no bar to plaintiff's claim for negligent failure to preserve evidence. Bondu, 473 So.2d at 1313.
Courts have applied the certainty requirement more stringently in contract cases than in tort. See Sebert, Punitive and Nonpecuniary Damages in Actions Based Upon Contract: Toward Achieving *29 the Objective of Full Compensation, 33 UCLA L.Rev. 1565, 1567 (1986). The reason for the more stringent application in contract is that in tort, once the plaintiff is in the area of risk created by the defendant's wrong, the defendant is usually liable for all injuries caused by his misconduct. In contract, undoubtedly out of concern for the impact on commerce, damages are limited to the types of loss the breaching party had reason to anticipate at the time the contract was made. Id.
It is now an accepted principle of contract law, nonetheless, that recovery will be allowed where a plaintiff has been deprived of an opportunity or chance to gain an award or profit even where damages are uncertain. In fact, the law of protecting chances or opportunities originated not as a tort cause of action but rather as an action for breach of contract. See Comment, Chances as Protected Interests: Recovery for Loss of a Chance and Increased Risk, 17 U.Balt.L.Rev. 139 (1987). This alternative theory of recovery was established under the English Common Law where the courts rejected the all-or-nothing approach and permitted recovery under circumstances where not only the amount of damages was uncertain, but also where the fact of damage remained open to question. Recovery was based not on the value of the contract; instead the value of the plaintiff's opportunity or chance of success at the time of the breach became the basis for the award.
The factfinder on the damage issue is thus restrained by the risky realities of litigation to reduce the anticipated damages to the extent that any uncertainty reduced the value of the award or earnings. The English cases permitted recovery accordingly on the theory that although uncertainty diminishes the value of an opportunity, it does not render it worthless.[8]See Comment, Damages Contingent Upon Chance, 18 Rutgers L.Rev. 875 (1964). Some American courts followed the English lead, e.g., Wachtel v. National Alfalfa Journal Co., 190 Iowa 1293, 176 N.W. 801 (1920); Kansas City M. & O. Ry. Co. v. Bell, 197 S.W. 322 (Tex.Civ.App. 1917), with the approval of American commentators. See e.g., Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60, 80 (1956); Schaefer, Uncertainty and the Law of Damages, 19 Wm. & Mary L.Rev. 719 (1978).

REMEDY NOT LIMITED TO ALEATORY CONTRACTS
Allstate argued to the trial court, and now on appeal, that while the Restatement (Second) of Contracts § 348(3) (1979) recognizes the cause of action for recovery of the value of a lost chance or opportunity, application of the remedy is limited to cases where the promise is aleatory.[9] The wisdom of the Restatement's narrow approach, however, has been questioned by other authorities. See e.g., J. Calamari & J. Perillo, Contracts § 14-10, at 533-34 (2d ed. 1977) (questioning why recovery for the value of a chance should be limited to aleatory contracts). Professor McCormick, in recognizing the value of a chance, disregards the Restatement's limitation of the cause to aleatory promises, opting for the fairer approach that a plaintiff should not be required to prove lost profits or be limited to a recovery of reliance damages, but should be permitted to sue on the alternative theory of the value of the lost opportunity. He writes:
[W]here the value of the chance is not outweighed by a countervailing risk of actual loss, and where it is fairly measurable by calculable odds, or by evidence bearing specifically on the probabilities, or by expert opinion, and where the *30 amount of the expected gain is itself fixed or approximately ascertainable, the jury should be allowed to value the lost opportunity.
C. McCormick, Damages § 31, at 123 (1935).
We, likewise, reject Allstate's argument for limiting the value of a chance to aleatory contracts in view of the legal trend toward expanding the scope of remedies for breach of contract.[10] Our rejection of the narrow view of contract damages is also consistent with that of writers who suggest that the law of contract is being absorbed by the expanding theory of tort. E.g., G. Gilmore, The Death of Contract (1974). In this case the plaintiff set forth facts sufficient to permit a jury to conclude that the parties had a valid contract and that damages were measurable by recognized standards. We agree with the appellant that it is within the jury's province to determine the value of her lost chance or opportunity.

PRODUCT DEFECT PRESUMPTION
Under Florida law, a presumption of manufacturing defect may be available to a plaintiff where a product is destroyed in an accident caused by a malfunction of the product. Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981).[11] Allstate, in its final defense of the judgment on review, contends that loss of the evidence did not hamper Miller in the presentation of her civil action against the automobile's manufacturer because of the availability of the presumption of a manufacturing defect.
Stated otherwise, Allstate's argument on this point is that a third-party custodian who unlawfully destroys a product which allegedly caused an accident owing to a defect, may avail itself of the inference  which makes for a prima facie case against the manufacturer  as a defense to a claim brought by the injured party against the third party for negligent or intentional spoliation of evidence. We reject the argument for sound policy reasons.
All the cases we have reviewed apply the product defect inference in product liability actions against the manufacturer or its privies where the allegedly defective product was consumed or rendered useless as evidence in the course of the malfunction. See e.g., Greco v. Bucciconi Engineering Co., 283 F. Supp. 978 (W.D. Pa. 1967), aff'd, 407 F.2d 87 (3d Cir.1969), cited in Cassisi, 396 So.2d at 1148. It is said in those cases that a plaintiff makes a prima facie case by establishing that his injuries were caused by a product which was in a defective condition at the time it left the hands of the seller. For reasons of "practical evidentiary problems," the burden shifts to the manufacturer  the one most familiar with the product  to prove that its product was defect-free at the time of the injury, or that the defect was not the cause of the injury. Cassisi, 396 So.2d at 1147-1151. Those cases do not present the situation where evidence critical to the product liability claim or defense has been destroyed by third parties in violation of a legal duty to preserve.
*31 In an action for the destruction of evidence, the plaintiff's burden is to show that the defendant's interference cost her an opportunity to prove her lawsuit.[12] Where the prima facie case has been made in a product liability case, and the corporate defendant introduces evidence from which the jury could absolve it from negligence and liability, it is highly improbable that the plaintiff could recover solely on the strength of the facts supporting the permissible inference or presumption by which her case got to the jury. It cannot be said, therefore, as grounds for a judgment favorable to Allstate on the liability issue, that the plaintiff could still prove her lawsuit even if the product defect inference is rebutted.[13] The plaintiff may be obligated to rebut the defendant's evidence by proof of physical facts and circumstances showing it to be incredible. 65A C.J.S. Negligence § 243(7) (1966).
If the case otherwise survives defense motions for a judgment as a matter of law, the able trial judge will be called upon to fashion instructions, consistent with our broad holdings here, to aid the jury in making a finding on damages. Refinements in the law, as needed, must await a judgment on a jury verdict, and further review. We do not anticipate what specific issues may arise.
Reversed and remanded for further consistent proceedings.
NOTES
[1] Because the counts for breach of contract and promissory estoppel were not dismissed, those claims were not before the appellate court. Smith, 151 Cal. App.3d at 495, 198 Cal. Rptr. at 832.
[2] See Hazen v. Municipality of Anchorage, 718 P.2d 456 (Alaska 1986) (recognizing the tort on grounds that a potential lawsuit is a valuable probable expectancy). Compare Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177 (1987) (holding that, absent an independent tort, contract, agreement, voluntary assumption of duty, or special relationship of the parties, Kansas should not recognize the spoliation tort); Petrik v. Monarch Printing Corp., 150 Ill. App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312 (1986) (refusing to decide whether Illinois law would recognize a spoliation tort for the reason that plaintiff's claim lacked the essential element of causation); Velasco v. Commercial Bldg. Maintenance Co., 169 Cal. App.3d 874, 215 Cal. Rptr. 504 (1985) (although cause of action may be stated for negligent destruction of evidence needed for prospective civil litigation, maintenance worker who disposed of unlabelled bag on attorney's desk was not liable because it was not foreseeable that bag contained valuable evidence needed for client's product liability action) See generally J. Gorelich, S. Marzen, L. Solum, Destruction of Evidence (1989); Annotation, Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable, 70 A.L.R. 4th 984 (1989).
[3] Reid v. State Farm Mut. Auto. Ins. Co., 173 Cal. App.3d 557, 218 Cal. Rptr. 913 (1985), reached a result different from our decision only because of the absence of a contractual obligation. There the court held that a permissive user of an insured automobile had no reasonable expectation that the insurer would preserve and protect his claim against third parties arising out of an accident  in the absence of a duty imposed by contract.
[4] THE MODIFYING DOCTRINES

There are various modifications to the rule of certainty. They enable the courts, while holding up a high standard of certainty as an ideal, to avoid applications of the rule to a harsh result. Among them are:
(a) If the fact of damage is proved with certainty, the extent or amount may be left to reasonable inference.
(b) Where the defendant's wrong has caused the difficulty of proof of damage, he cannot complain of the resulting uncertainty.
(c) Mere difficulty in ascertaining the amount of damage is not fatal.
(d) Mathematical precision in fixing the exact amount is not required.
(e) If the best evidence of the damage of which the situation admits is furnished, this is sufficient.
(f) The plaintiff may recover the value of his contract, and this may be measured by the value of the expected profits.
(g) Profits may sometimes be proved as evidence of the damages, when they would not be directly recoverable.
C. McCormick, Damages § 31, at 101-102 (1935). See also W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla. 1989).
[5] Similarly, in this case no product liability claim has been filed. A product defect inference could prove the plaintiff's lawsuit unless the defendant puts on evidence to rebut the inference. The destruction of the evidence would become significant at that point. See infra discussion on product defect presumption.
[6] Although the principle that the defendant should not be permitted to take advantage of the uncertainty in damages caused by his harm was applied to a tort action in Smith, the rule is applicable in contracts law notwithstanding that the breaching party is not necessarily a "wrongdoer." D. Dobbs, Remedies § 12.3, at 803 (1973). "If at the time of contracting, the breaching party had reason to foresee that the plaintiff would have difficulty in making certain proof of damages, an additional basis exists for applying a liberal rule in favor of the plaintiff." Id. at 802.
[7] Bondu suggests that the plaintiff must first initiate the underlying lawsuit, and receive an adverse final judgment due to the inability to prove the case, before filing an action for spoliation of evidence. For reasons of judicial economy, and to prevent piecemeal litigation, we see no reason to wait for a final judgment in the underlying lawsuit before bringing an action for the destruction claim. We agree with the reasoning in Smith v. Superior Court, 151 Cal. App.3d at 498, 198 Cal. Rptr. at 834, that a jury trying the concurrent claims in a single proceeding may be in the best position to determine issues of causation and damages. See J. Gorelich, S. Marzen, L. Solum, supra, § 4.20, at 163.
[8] Perhaps the first case to recognize the value of a chance is the landmark English case of Chaplin v. Hicks, (1911) 2 KB 786 where the finalist in a beauty contest was awarded damages based on the value of her lost opportunity after she was deprived of her chance to win by the defendant's failure to notify her of the personal interview.
[9] A contract is aleatory or hazardous when the performance of that which is one of its objects depends on an uncertain event. It is certain when the thing to be done is supposed to depend on the will of the party, or when in the usual course of events it must happen in the manner stipulated. Black's Law Dictionary 65 (5th ed. 1979).
[10] Traditional breach of contract cases, particularly those between parties in a special relationship such as employer/employee or insurer/insured, are frequently brought as bad-faith or tortious breaches, subjecting the breaching party to punitive damages and attorney's fees  departing from the limited remedies historically available in contract. See Comment, Formulating Standards for Awards of Punitive Damages in the Borderland of Contract and Tort, 74 Cal. L.R. 2033 (1986).
[11] Cassisi distinguishes between "passive" appliances such as clothes dryers, stoves, and television sets which are set in operation by turning a switch, and a product, such as a car, which requires a consumer's active participation in the operation. There is no disagreement that the presumption arises in the passive use cases. By way of contrast, the court noted that "the fact that a car leaves the road while under the control of its driver may not necessarily give rise to the same generous inference of defect." Cassisi, 396 So.2d at 1152. Although application of the inference to automobile cases has been roundly criticized, most jurisdictions make no distinction between vehicles and other products. Annotation, Strict Products Liability: Product Malfunction Or Occurrence Of Accident As Evidence Of Defect, 65 A.L.R. 4th 346 (1988).
[12] A plaintiff need not show that, but for the destruction of evidence, he would have prevailed in the underlying action. Smith v. Superior Court, 198 Cal. Rptr. at 837.
[13] In the more efficient trial of both the product liability claim and the destruction of evidence in a single action, see supra note 7, the jury will decide at the outset whether the plaintiff proved by the greater weight of the evidence that the product was defective when it left the hands of the seller. If the answer to that question is no, the jury will next decide whether the failure to prove that issue was a result of the destruction of the evidence by Allstate.