ON MOTION FOR REHEARING
LOGUE, J.
We grant appellees’ motions for rehearing in part, vacate the prior majority opinion issued January 21, 2015, and issue the following opinion in its stead.
R. Randy Gonzalez (“homeowner”) appeals from a final judgment in his action against Ramon Pacheco and his design firm, Ramon Pacheco and Associates, Inc. (collectively, “the Pacheco defendants”). After a bench trial, the trial court awarded the homeowner direct damages for his costs in redesigning and replacing the air conditioning system in his newly constructed home. The trial court, however, refused to award damages for the loss of the use of the home while this work was being done because the trial court found the estimate too speculative as a matter of law. We reverse on this point and remand with instructions for the trial court to consider the estimate of value and determine the amount of loss of use damages in its capacity as the finder of fact.
FACTS AND PROCEDURAL HISTORY
The homeowner hired the Pacheco defendants to design his new home including the ail’ conditioning system. After the home was completed, the homeowner discovered that the air conditioning system did not adequately cool the home. As a result, the homeowner could not move in. Pacheco was advised of the problems with the air conditioning system, but did not take actions to remedy them.
The homeowner hired a new design firm to address the problems. The air conditioning system was subsequently repaired, requiring a twenty-month process. According to the trial court’s findings of fact, this process involved “extensive demolition work” that “was destructive, messy, and intrusive with the home unsuitable for living throughout the process.” During the twenty-month demolition and repair period, however, the homeowner’s son slept in the home intermittently, serving as a de facto security guard. Also, the homeowner stored at the house a boat, some cars, and the furniture he had purchased for the home.
The homeowner filed a complaint against the Pacheco defendants for the •negligent and defective design of the air conditioning system. At trial, the homeowner sought both direct damages for the costs incurred in replacing the faulty air conditioning system and loss of use damages stemming from his inability to move into the home during the repair period. To establish the amount of his damages for the loss of use of the home, the homeowner presented the testimony of a real estate appraiser. The homeowner’s appraiser was the only valuation expert who testified at trial. Based on comparable rentals in the area, the appraiser testified that the rental value of the home, during the repair period, was $15,500 per month. On cross-examination, however, the appraiser admitted that he was unaware that the homeowner’s son was sleeping at the *15 residence to serve as a security guard and that the homeowner stored his boat, some cars, and the furniture at the house. When asked if there would be a rental market for a home considering those facts, the appraiser testified that “[t]here would be a rental market for it, but it would be somewhat diminished for that needed garage storage and needed use of the dock.” He also admitted that he had not conducted that analysis.
Following a bench trial, the trial court entered detailed findings of fact and conclusions of law. The trial court concluded that “the preponderance of the evidence at trial was that the System’s design was defective, in breach of the [Pacheco] Defendants’ legal obligations.”. It found that the homeowner and his family “were unable to move into the home during this 20 month period.” The trial court awarded the homeowner $77,919 in direct damages for the redesign and repair of the air conditioning system.
The trial court denied loss of use damages, however, finding that such damages were “too speculative” as a matter of law because (1) the appraiser purportedly admitted that there was no market for the subject property, considering the fact that the homeowner’s son had slept at the home as a security guard and that the homeowner had stored a boat, car, and furniture at the house during the demolition and repair period; and (2) the appraiser failed to make adjustments for these uses. As a result, “the Owner’s claim for loss of use against Mr. Pacheco and the Firm therefore fail because the damages are too speculative and insufficient expert opinion exists to establish same.” These appeals followed.
ANALYSIS
The primary issue presented on appeal is whether the homeowner’s estimate of loss of use damages was too speculative as a matter of law.[1] We hold that it was not.
Under Florida law, a homeowner that loses the use of a structure because of delay in its completion is entitled to damages for that lost use. Russo v. Heil Constr., Inc., 549 So.2d 676, 677 (Fla. 5th DCA 1989). Florida courts have held that “[dfemages for delay’ in construction are measured by the rental value of the building under construction during the period of delay.” Fisher Island Holdings, LLC v. Cohen, 983 So.2d 1203, 1204 (Fla. 3d DCA 2008); see also Vanater v. Tom Lilly Constr., 483 So.2d 506, 508 (Fla. 4th DCA 1986) (“Where a contractor breaches a contract by failing to complete an improvement, the owner is entitled to damages for delay in completion measured by its rental value during the period of delay.”).
In the first place, the trial court stated that the appraiser admitted there was no market for the subject property because the son slept at the property and the boat, cars, and furniture were stored there. Of course, if the evidence supported a finding that there was no market for the subject property, then the estimate of value would indeed be too speculative as a matter of law. A review of the record, however, reveals the appraiser never testified that there was no market for the subject property.
To the contrary, when directly asked on cross-examination whether a market existed in these circumstances, the appraiser answered, “[tjhere would be a rental market, but it would be somewhat diminished for that needed garage storage and needed use of the dock.” The only testimony on this point was that a market did exist, but *16 the value would be diminished. The trial court’s finding that there was no market is • directly contradicted by the undisputed testimony in the record. It was error to conclude that the appraiser’s estimate was too speculative as a matter of law on this basis.
Second, the trial court found the appraiser’s estimate was too speculative because it failed to reflect adjustments for the homeowner’s son sleeping in the house as a guard and for the storage of the cars, boats, and furniture. Under Florida law, “the plaintiff must present evidence regarding a reasonable certainty as to its amount of damages, and a plaintiffs claim cannot be based upon speculation or guesswork.” Regions Bank v. Maroone Chevrolet, L.L.C., 118 So.3d 251, 257 (Fla. 3d DCA 2013) (citations and quotations omitted). At the same time, “Florida law has long specified that reasonable certainty as to the facts of injury and causation is more critical than reasonable certainty as to the computation of the resultant losses.” Maggolc, Inc. v. Roberson, 116 So.3d 556, 558 (Fla. 3d DCA 2013). With these principles in mind, we turn to the question of whether the appraiser’s failure to make adjustments for these factors made his estimate of value tantamount to speculation and guesswork.
A nearly identical issue was considered in the case of State Road Department v. Falcon, Inc., 157 So.2d 563 (Fla. 2d DCA 1963), albeit in the context of eminent domain. The appraiser for the State was not aware of, and therefore did not properly consider, an option to purchase relating to a crucial comparable property. As occurred in the instant case, this failure was brought out during the cross-examination of the appraiser. When the jury returned a verdict in favor of the State, the trial court set it aside as based upon the appraiser’s estimate of value, which, the trial court found, was incompetent as a matter of law for failure to consider or adjust for this factor. Framing the issue as whether “the failure to consider one transaction render the testimony incompetent,” the appellate court held that such failure went to the weight, and not the legal sufficiency, of the evidence:
Upon examination of relevant authority, both in the cases and the texts, the conclusion is inescapable that the failure of an otherwise competent expert witness to consider one of numerous factors involved in assessing compensation goes not to his competency or the competency of the testimony but only to the weight of the testimony.
Id. at 566.
Similarly, in Florida Department of Transportation v. Armadillo Partners, Inc., 849 So.2d 279, 287 (Fla.2003), the State’s appraiser may have overlooked one aspect of severance damages, the loss of an arbor area in a shopping mall, in reaching its estimate of those damages. The appellate court set aside a jury verdict in favor of the State on the grounds that the appraiser’s estimate of value was insufficient as a matter of law for the failure to make the necessary adjustment. Quoting the above language from Falcon, which it expressly found to be “correct” and “persuasive,” the Supreme Court reversed. Id. at 287. It held that
an appraiser’s opinion may be subject to impeachment or to having its weight reduced because of its failure to properly consider one of the many factors that may influence an opinion as to value, but that failure should not prevent the opinion’s admission, nor cause its complete exclusion from the jury’s consideration.
Id. at 287-88. Accordingly, “even had DOT’S expert failed to include the arbor area in his valuation of severance damages, we conclude that this exclusion would have *17 gone to the weight, not the admissibility of his testimony.” Id. at 288.
Of course, notwithstanding the holdings in Falcon and Armadillo Partners, there may be cases in which an appraiser’s failure to make, or inability to explain, essential and material adjustments renders his or her valuation too speculative as a matter of law. See generally, Div. of Admin. v. Samter, 393 So.2d 1142, 1145 (Fla. 3d DCA 1981) (finding appraisal legally insufficient because its estimate of value “is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning”); Walters v. State Rd. Dep’t, 239 So.2d 878, 882 (Fla. 1st DCA 1970) (finding appraisal legally insufficient when it was based upon “a secret, purely subjective, formula that existed, if at all, only in the mind of a partisan appraiser”). This case is not one.
Here, the appraiser reached his estimate of rental value using three comparable rental properties. The appraiser’s testimony was supported by a twenty-page appraisal admitted into evidence without objection. The appraisal included maps, photographs, and detailed descriptions of the subject property and the three comparable rentals. It also included a narrative and chart that provided a numerical breakdown showing how the appraiser adjusted the comparable rentals to the subject property for factors such as rent concessions, location/view, design and appeal, age/condition, square footage and room count, and amenities such as pools, barbeque grills, terraces, docks and garage size. The appraiser’s testimony was admissible as a prima facie case for the value of the lost use of the home during the repair period. See Fisher Island Holdings, 983 So.2d at 1204; Falcon, 157 So.2d at 566; Armadillo Partners, 849 So.2d at 287. The Pacheco defendants did not object to the admission of the estimate of value and never sought to strike the estimate from evidence.
Placed in this context; the missing adjustments are not sufficiently large or material on their face to render the estimate insufficient as a matter of law. In fact, the son sleeping at the house as a de facto guard is not a basis for any adjustment, much less a large one. This alleged “use” was more of a burden than a benefit to the homeowner. The son did not “reside” or “live” in the house. To the contrary, because of the design defects, the trial court noted, “[t]he Home was hot, humid, and without sufficient air flow” and the remedial construction work “was destructive, messy, and intrusive, with the Home unsuitable for living throughout the process.” Instead of using the home as a residence, the undisputed evidence indicated the son stayed overnight in the house only to guard it. After he stayed overnight, the son returned to his parents’ home in order to eat, shower, launder his clothes, and live with his family.
Indeed, in the findings of fact, the trial court specifically found that this alleged “use” was no use at all:
During the 20 month period that the System was being re-designed and repaired, Gonzalez’s son, Randy Gonzalez, Jr., intermittently slept at the Home. He served as a de-facto security guard, and let the construction workers into the Home in the morning. At trial, no evidence was presented that Gonzalez Jr. did anything other than stay in one bedroom, which he was able to cool by closing vents in other parts of the Home. The Court finds that this did not constitute “use” of the Home, and certainly was not consistent with the parties’ expectations.
Rather than hiring private security, the owner used his son as a guard. Far from a “use” of the property, this course of *18 action constituted a good faith mitigation of damages. The trial court erred in finding that the absence of an adjustment for this purported “use” makes the appraiser’s estimate too speculative.
The only remaining issue concerns the adjustment for the storage. No testimony established the value of such storage. The appraiser did testify that the market value “would be somewhat diminished” if an adjustment was made for the storage, but there was no testimony as to what “somewhat diminished” actually meant in these circumstances. If the missing adjustment for the storage was large enough to remove the estimate of value outside the range of reasonable rental values, its absence obviously made the estimate speculative. If, however, the missing adjustment for storage was too small to remove the estimate of value outside the reasonable range of rental values, its absence obviously did not make the estimate speculative.
While the boat, the cars, and the furniture were stored at the property during the demolition and repair process, there was no testimony that the homeowner or his family visited to access the boat or enjoy the furniture. To the contrary, the house was uninhabitable during the entire period. The property was essentially a construction site. The value of storing items at a construction site with no apparent access to, or enjoyment of, the stored items does not appear on its face to be large compared to the $15,500 per month rent commanded by the subject, high-end property. An adjustment for the value of storage, therefore, cannot be presumed as a matter of law to remove the estimate of rental value from the range of fair rental values, as least without evidence so indicating. Thus, this case remains squarely in the ambit of the holdings of Falcon and Armadillo Partners.
Moreover, the need for the storage arose from the design and construction defects caused by the Pacheco defendants. Obviously, as the trial court recognized during the hearing, “when people are waiting for a home to be built they start buying things, be it furnishings and others and it comes to a point in time where you got to have it delivered, you have to have it stored if you can’t eventually move it in or if you move it in you have to protect it.” Rather than rent space for the necessary storage, the owner used the property for storage. Like utilizing the son as a security guard, storing these items on the property under construction appears more like a mitigation of damages than a beneficial use.
Under these circumstances, to attack the expert’s opinion of fair rental value as too speculative as a matter of law, the Pacheco defendants needed to do more than merely establish that the expert failed to make certain adjustments. They also needed to establish that the failure to make those adjustments was material in the sense that the failure to make the adjustments removed the estimate from the range of fair market value. They have not done so. Without such a showing in these circumstances, this case fails squarely within the holdings of Falcon and Armadillo Partners. The appraiser’s failure to consider the missing adjustments goes, at most, to the weight of his estimate of value and not to its legal sufficiency.
CONCLUSION
The appraiser’s failure to make an adjustment for storage goes to the weight, not the legal sufficiency, of the appraiser’s estimate of fair rental value. Falcon, 157 So.2d at 566. The appraiser’s estimate, however, is subject “to having its weight reduced because of its failure to properly consider one of the many factors that may *19 influence an opinion as to value.” Armadillo Partners, 849 So.2d at 287. We therefore reverse the part of the judgment that held that the homeowner’s estimate of the loss of use damages was insufficient as a matter of law. We remand for the trial court to accept the estimate as legally sufficient, give it due consideration, and determine the loss of use damages in its capacity as the finder of fact.[2]
Affirmed in part; reversed in part; remanded.
SALTER, J., concurs.

. We affirm, without discussion, the issues raised on appeal by the Pacheco defendants.

. Because the parties rested their respective cases, nothing in this opinion should be read to indicate that either party may reopen the record for the introduction of new evidence as a matter of legal right.