# Third District Court of Appeal

## State of Florida

Opinion filed September 11, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1083
Lower Tribunal No. 18-931
_____

## John W. Schmitz, et al.,
Appellants/Cross-Appellees,

vs.

## Dorothy Joan Schmitz, et al.,
Appellees/Cross-Appellants.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Zarco Einhorn Salkowski & Brito, P.A., and Alejandro Brito; Kula & Associates, P.A., and Elliot B. Kula and William D. Mueller, for appellants/cross-appellees.

Mombach, Boyle, Hardin & Simmons, P.A., and Michael P. Hamaway and Seth A. Kupilik (Fort Lauderdale); Bruce S. Rogow, P.A., and Bruce S. Rogow (Cedar Mountain, NC) and Tara A. Campion (Boca Raton), for appellees/cross-appellants.

Before EMAS, MILLER and BOKOR, JJ.

BOKOR, J.

These cross-appeals arise from allegations of a decades-long pattern of fraud, abuse, and self-dealing by John Schmitz, co-owner and former president of a closely-held real estate investment corporation, Schmitz Development Company (hereinafter "SDC"), as well as his wife, Lucila. John argues that the trial court erred by entering judgment against him on various claims for breach of contract, breach of fiduciary duty, and statutory violations brought by Dorothy Joan Schmitz (who goes by Joan) and Cheryl Schmitz, the surviving spouses of John's deceased siblings and current coequal directors of SDC. John also claims that the trial court abused its discretion by imposing a constructive trust on his ownership interest in SDC as a remedy for the trial court's findings of extensive financial misconduct. Joan and Cheryl cross-appeal to challenge the trial court's limitation of damages on certain claims the court found to be derivative or time-barred, as well as the sufficiency of the evidence to support damages on certain claims, the trial court's computation of prejudgment interest on all claims, and the extent of Lucila's individual liability.

## BACKGROUND AND PROCEDURAL HISTORY

SDC is an Illinois corporation founded in 1946 by John Schmitz's father, Herbert. Prior to his death, Herbert named himself and his three sons,

John, Michael, and Thomas, as co-directors for life, with Herbert's ownership interest passing to his wife, Marion, upon his death.

To codify their own respective ownership rights, John, Michael, and Thomas amended the company bylaws by way of a shareholders' agreement that provided they three would be the sole directors of SDC for life in equal shares upon Marion's death. The agreement also included a unanimity provision preventing John, Michael, and Thomas from receiving "commissions or other compensation . . . in connection with any sale, purchase, transaction, or other matter involving the Company," requiring all SDC's investments and expenditures to be approved by all three directors, as well as requiring all three to receive the same "benefits, compensation or emoluments from the Company." The agreement was subsequently amended to clarify that John, Michael, and Thomas's surviving spouses would inherit their respective rights.

After Michael and Thomas passed away, Joan and Cheryl assumed their respective roles as coequal shareholders of SDC and began requesting information from John about his management of the company, including corporate financial records and valuations. John, who at that point had been primarily responsible for managing SDC's investments as its president for several years, initially declined to recognize Joan and Cheryl as

3

shareholders, culminating in their jointly removing him from his position as president, appointing an interim president, and initiating a forensic accounting of the company. John then brought a complaint for declaratory judgment, seeking to bar their appointment. The trial court subsequently found that Joan and Cheryl were directors of SDC and had authority to remove John as president. John does not challenge this declaratory judgment on appeal.

In response to the complaint, Joan and Cheryl brought the five counterclaims that are at issue on this appeal. Count I was for breach of contract, alleging that John breached the unanimity provision of the bylaws by making various transactions on behalf of SDC without their approval, profiting individually, and failing to pay them equal compensation. Count II alleged breach of fiduciary duty due to John's self-dealing, misuse of corporate assets, and disregard for the rights of the other shareholders. Counts III–V sought various remedies under Illinois business administration statutes, including a court-ordered inspection and copying of records, an accounting of the company, and a prohibition against John's further misuse of corporate assets. Subsequently, SDC also brought crossclaims on its own behalf against John for fraud, conversion, and breach of fiduciary duty,

seeking reimbursement for several unauthorized transactions and payments made by John using SDC's assets for his own benefit.

During the course of the proceedings, John and Lucila repeatedly evaded discovery and concealed or destroyed evidence, resulting in several sanctions and findings of contempt. Specifically, the undisputed findings indicate that shortly after entry of the declaratory judgment, Lucila accessed a storage unit owned by SDC and removed or destroyed several boxes and cabinets containing corporate records; John irretrievably deleted accounting records from a computer prior to data extraction and instead purchased and proffered a different computer; and both John and Lucila failed to inform the court of the existence of the missing records after court-ordered inspections.

The trial court, after finding that John and Lucila had engaged in "flagrant, persistent, and willful . . . discovery tactics that can only be described as inexcusable and not in good faith," directed that the burdens of proof on all of Joan and Cheryl's counterclaims would be shifted, such that "Counter-Plaintiffs are entitled to a judgment on each of their claims unless the Counter-Defendants prove by the greater weight of the evidence that Counter-Plaintiffs are not entitled to such relief." The court also applied this burden-shifting to SDC's crossclaims in amended findings of fact and conclusions of law after the trial.

5

Following the extensive nonjury trial, the court found in favor of Joan, Cheryl and SDC on most of their claims, awarding Joan and Cheryl a total of $566,804.09 and SDC a total of $3,946,104.46, plus costs and fees and prejudgment interest. Joan and Cheryl's individual recovery was limited as to several claims the court found to have been derivative, and the court did not assess damages against Lucila jointly or individually, despite finding that she had participated in and benefitted from most of John's tortious acts. The court also imposed a constructive trust over John's share of SDC until such time as the remedial conditions in the judgment were fully satisfied. These appeals followed.

## ANALYSIS

### I. Burden-Shifting Sanction

We begin by addressing John's argument that the trial court abused its discretion by applying the burden-shifting sanction to SDC's crossclaims. John claims that because the court did not expressly mention that the burden-shifting would be applied to the crossclaims until after the initial findings of fact and conclusions of law, and because the crossclaims and counterclaims were bifurcated for trial at the time, the sanction was unfairly imposed without notice and that this error should void the court's finding of liability as to all crossclaims for which SDC would not have prevailed but for

6

the burden shifting. We review a trial court's imposition of sanctions under an abuse of discretion standard. See, e.g., Bertrand v. Belhomme, 892 So. 2d 1150, 1152 (Fla. 3d DCA 2005).

As a sanction for contempt of a discovery order, a trial court may "order that the matters regarding which the questions were asked or any other designated facts shall be taken to be established for the purposes of the action." Fla. R. Civ. P. 1.380(b)(2)(A). A trial court's inherent authority to sanction litigants for bad-faith misconduct "carries with it the obligation of restrained use and due process." Moakley v. Smallwood, 826 So. 2d 221, 227 (Fla. 2002). Accordingly, the trial court must provide notice and an opportunity to be heard prior to imposing a sanction. See, e.g., Shir Law Grp., P.A. v. Carnevale, 345 So. 3d 380, 383 (Fla. 3d DCA 2022). "While 'a trial court has the inherent power to impose sanctions on a party who destroys evidence or perpetuates a fraud upon the court,' that power should be exercised with great restraint because the courts of this state favor adjudications on the merits." E.I. DuPont De Nemours & Co. v. Sidran, 140 So. 3d 620, 623 (Fla. 3d DCA 2014) (quoting in part Babe Elias Builders, Inc. v. Pernick, 765 So. 2d 119, 120 (Fla. 3d DCA 2000)).

Against that backdrop, while we agree that the trial court properly exercised its discretion to impose the burden-shifting sanction to the

7

counterclaims, we are compelled to agree with John and Lucila that the trial court improperly applied the burden-shifting to the crossclaims without proper notice. The trial court did not expressly indicate that it would be applying the sanction to the crossclaims until its second amended findings of fact and conclusions of law, in response to a motion for rehearing in which John and Lucila argued that the court had already effectively done so *sub silentio*, and the only additional findings the court added in that second amended order related to the burden-shifting. While we agree that the crossclaims and counterclaims were consolidated for discovery purposes at the time of the sanction, and that the crossclaims were extensively tried by consent throughout the proceedings, SDC did not join in the sanctions motion at the time, and in any event, the procedural status of the cases had no bearing on the due process rights of the parties. See CDI Contractors, LLC v. Allbrite Elec. Contractors, Inc., 836 So. 2d 1031, 1033 (Fla. 5th DCA 2002) ("Consolidation affects the procedure of the cases, but has no effect on the substantive rights of the parties in an individual case, and does not destroy their separate identities."). Thus, relying on the record before us, the court improperly applied the burden-shifting sanction to the crossclaims without proper notice.

8

However, we remand only as to the crossclaims for which the court did not find that its judgment would have been the same irrespective of the burden-shifting.[1] Specifically, the trial court awarded damages to SDC on two claims but did not indicate that SDC would have prevailed regardless of the burden-shifting: (1) John's breach of the shareholders' agreement by making $58,625 in unauthorized and commissions and legal fees from SDC to himself; and (2) John's misappropriating $91,300 in proceeds from the sale of a property owned by SDC in Port St. Lucie, Florida by causing SDC to sell the property and directing the proceeds to go to another entity owned solely by John and Lucila. Here, John and Lucila do not challenge the sufficiency of the evidence to support the awards in favor of SDC on most of its crossclaims, and the trial court did not change its disposition on the crossclaims between the original findings of fact (utilizing a standard burden of proof) and the amended findings of fact (utilizing the burden-shifting framework). Thus, we reverse and remand only where we cannot determine whether the outcome would have been the same without the burden-shifting. Accordingly, the appropriate remedy is to remand for the trial court to

---

[1] For the remaining claims, the trial court provided sufficient record evidence to support its ultimate findings without burden shifting. See, e.g., Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976) ("It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal before it.").

9

reevaluate the remaining crossclaims under the appropriate burden of proof and conduct additional proceedings as necessary.

## II. Statutes of Limitations

Both the direct appeal and cross-appeal challenge the trial court's application of Florida statutes of limitations to all claims. John and Lucila challenge the trial court's judgment in favor of SDC on its breach of fiduciary duty crossclaim as to three transactions that they allege were barred by the four-year statute of limitations for intentional torts, section 95.11(3)(n), Florida Statutes. Joan and Cheryl cross-appeal to allege that the trial court should instead have applied the broader Illinois statutes of limitations to transactions encompassed by their breach of fiduciary duty counterclaim, as SDC is an Illinois corporation and the non-statutory counterclaims were effectively brought under the same Illinois shareholder statute as the statutory counterclaims. They also claim that the court erred by limiting damages as to one transaction the court found to be barred by the statute of limitations despite the limitation period being tolled by fraudulent concealment. Our review of issues relating to statutes of limitations is de novo. See, e.g., Nationstar Mortg., LLC v. Sunderman, 201 So. 3d 139, 140 (Fla. 3d DCA 2015).

We first find that the trial court properly applied Florida statutes of limitations as to all remaining claims. In deciding conflicts of law regarding statutes of limitations, "[t]he place of injury still determines which state's law applies, unless some other state has a more 'significant relationship' to the issue." Mezroub v. Capella, 702 So. 2d 562, 565 (Fla. 2d DCA 1997); see also Bates v. Cook, Inc., 509 So. 2d 1112, 1114 (Fla. 1987) (articulating "significant relationship" test). All of the acts alleged in the pleadings occurred in Florida, involved Florida property, and have no connection to Illinois other than SDC having been incorporated there. Joan and Cheryl nonetheless claim that their counterclaims were "encapsulated" within the Illinois shareholder remedy statute, 805 Ill. Comp. Stat. 5/12.56, which formed the basis of Count IV of their counterclaims. However, this statute only affords remedies to the court "[i]n an action by a shareholder" and is not itself an affirmative cause of action, but even if it were, the statute provides no basis to supersede the otherwise-applicable statute of limitations as to claims for which it provides a remedy. Id. (a). Thus, application of the Florida statutes of limitations was appropriate.

However, we reverse as to the other breaches of fiduciary duty that the court found to fall within the limitations period solely because of fraudulent concealment. John and Lucila claim that the court erred by applying the

11

delayed discovery doctrine to three transactions to the extent the claims were founded on fraud, as they would have otherwise been untimely.[2] Typically, "[a] cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. However, causes of action "founded on fraud" instead begin running "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Id. (2)(a); Tejara v. Lincoln Lending Servs., LLC, 271 So. 3d 97, 102–03 (Fla. 3d DCA 2019) (discussing delayed discovery doctrine and applying tolling to claim for conspiracy to commit fraud in the inducement; noting that application of doctrine to breach of fiduciary duty or other claims is not precluded where claim was founded on fraud); cf. Bivins v. Douglas, 335 So. 3d 1214, 1220 (Fla. 3d DCA 2021) (declining to apply

---

[2] The trial court applied the delayed discovery doctrine to three transactions encompassed by the breach of fiduciary duty claims. First, John's misappropriation of the $91,300 in proceeds from the sale of the Port St. Lucie property, discussed above. Second, John caused SDC to assign its right to recover $84,182.92 in bankruptcy proceeds from a former tenant to another company owned solely by John and Lucila. Third, John caused SDC to execute a lease with a restaurant company in which John and Lucila had an undisclosed ownership interest, provided numerous interest-free loans to the restaurant from SDC, and, after the restaurant was failing and about to go into foreclosure (thereby allowing SDC to repossess the property), instead caused SDC to purchase the failing restaurant for $1,836,702.95 based on a deliberately inflated appraisal that John obtained by failing to disclose various encumbrances on the restaurant property. John and Lucila argue only that these claims were time-barred and do not challenge the court's factual findings.

delayed discovery doctrine to claims of fraudulent misrepresentation in declaratory action where fraud was not pled with specificity). Here, the court, accounting for its burden-shifting sanction, found that John and Lucila had not demonstrated that the transactions were not fraudulently concealed, and thus concluded that the limitations periods began running from the time the acts giving rise to the cause of action were discovered. Because the trial court improperly applied the burden-shifting framework to these claims, we reverse and remand for reconsideration.[3]

Last, we reverse and remand for reconsideration of one crossclaim the court found to be partially time-barred. One of John's alleged breaches of fiduciary duty stemmed from a "fictitious vendor scheme" by which John caused SDC to make $213,668.24 in unauthorized rent payments between 2007 and 2018 to another entity, Schmitz Realty Company, that was owned solely by John and Lucila and had been operating under the fictitious name "P&P Brickell" to make the company sound similar to that of SDC's former

---

[3] For example, regarding the claimed misappropriation of the $91,000 in Lot 4C sale proceeds from the Port St. Lucie property, the trial court found that "there is nothing in the record that will permit this Court to conclude that the transactions were hidden or prevented from being known." But the trial court relied solely on the application of the burden-shifting to presume fraudulent concealment. Both because the burden shifting was inappropriate on these claims, and because of the higher evidentiary standard required to prove fraud, the trial court erred in its finding of fraud or fraudulent concealment and the resulting tolling of the statute of limitations.

13

landlord. The trial court specifically found that the use of the fictitious name in SDC's ledgers was intended to conceal the payments, and that John and Lucila would have been found liable for misappropriating corporate assets irrespective of the burden shifting. However, it is unclear what the court relied on to find that only $95,000 of these payments occurred within the limitations period and were thus recoverable. Accordingly, we reverse and remand to conduct additional proceedings or to provide further findings as appropriate.

### III. Derivative Claims

Next, we reverse the limitation of damages as to certain transactions encompassed by the breach of contract claims that the court found to be derivative and properly brought by SDC instead of Joan and Cheryl directly. The trial court awarded Joan and Cheryl damages for the statutory violations and for unpaid wages and dividends John improperly paid solely to himself in violation of the unanimity provision of the company bylaws, but declined to award individual damages on the remaining claims founded on unauthorized and fraudulent transactions, finding that the relief sought by Joan and Cheryl in their individual capacity concerned the same relief and injuries alleged by SDC. The court nonetheless found that the shareholders' agreement was a valid contract that John had breached, including by "[f]ailing and/or refusing to recognize Joan Schmitz and Cheryl Schmitz's

14

status as Directors of SDC and preventing them from exercising their rights in SDC."

We find that the trial court should not have barred Joan and Cheryl's recovery as to the breach of contract claims relating to unauthorized transactions made without Joan and Cheryl's approval during the period in which they were directors of SDC, as these claims were founded primarily on individual rights and injuries that did not first flow from initial injuries to the company.[4] With respect to questions of whether a claim is direct or derivative, we review the trial court's findings of fact for competent, substantial evidence, and its conclusions of law, including contract interpretations, de novo. See, e.g., Ferk Fam., LP v. Frank, 240 So. 3d 826, 835 (Fla. 3d DCA 2018).

---

[4] The trial court found seven categories of claims to be properly brought as derivative instead of direct actions: (1) the $213,668.24 in unauthorized rent payments from SDC to P&P Brickell; (2) the unauthorized sale of the Port St. Lucie property for $91,300; (3) the unauthorized assignment of $84,182.92 in bankruptcy proceeds; (4) the unauthorized loans to and purchase of the restaurant property for $1,836,702.95; (5) John's payment of $541,272.57 in unauthorized commissions and legal fees from SDC to himself (of which the court found that $58,625 was recoverable by SDC within the statute of limitations); (6) John's payment of $93,399.58 in unauthorized interest-free loans to SDC St. Lucie Partners, LLC, another company in which he and Lucila had an undisclosed ownership interest; and (7) John and Lucila's use of $340,506.38 in SDC's funds to pay their own legal fees in their action against Joan and Cheryl. The court did not make separate findings as to any commissions, compensation, or benefits John individually received from these transactions in violation of the shareholders' agreement.

15

[A]n action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members. . . . [T]here is an exception to this rule under Florida law. A shareholder or member need not satisfy this two-prong test when there is a separate duty owed by the defendant(s) to the individual plaintiff under contractual or statutory mandates. Thus, if the plaintiff has not satisfied the two-prong test (direct harm and special injury) or demonstrated a contractual or statutory exception, the action must be maintained derivatively on behalf of the corporation or company. Such a rule comports with general standards of corporate and LLC law by protecting individuals from the obligations arising out of their relationship to the company, while also allowing the parties greater freedom to contractually set their respective obligations.

Dinuro Invs., LLC v. Camacho, 141 So. 3d 731, 739–40 (Fla. 3d DCA 2014) (citations omitted); see also Karten v. Woltin, 23 So. 3d 839, 841 (Fla. 4th DCA 2009) ("We look to the body of the complaint to determine whether the injury is direct to the shareholder or to the corporation.").

Here, both the breach of contract and breach of fiduciary duty counterclaims were founded on the unanimity provision of the shareholders' agreement, incorporated into the bylaws, which requires not only that all executives receive the same "benefits, compensation or emoluments" from SDC, but also that all of SDC's investments and expenditures be approved by all three executives. The agreement vested these rights not in the shareholders generally, but in John, Michael, and Thomas specifically as

16

directors for life, to be automatically assumed by their surviving spouses (Lucila, Joan, and Cheryl) after their deaths. Thus, the injury pertained not merely to John's self-dealing at the expense of the company, but also Joan and Cheryl's inability to participate in the management of SDC by approving its investments and expenditures. The counter-complaint includes specific allegations to this effect, including expressly seeking damages for investments made without the approval of the other directors, and these claims are not equivalent to seeking damages for diminution of the value of SDC, which Joan and Cheryl never asserted. See DiSorbo v. Am. Van Lines, Inc., 354 So. 3d 530, 543 (Fla. 4th DCA 2023) (finding that breach of contract claim by coequal shareholder could be brought directly where alleged self-dealing unlawfully diluted plaintiff's ownership percentage; diminution of share value "was a special injury to Aldo that was separate and distinct from that experienced by Anthony—the dilution harmed only Aldo and did not harm Anthony"); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 389 (Fla. 4th DCA 1999) (finding that claims predicated on misrepresentations surrounding initial public offering were properly brought as direct actions, as cause of action flowed from injury to shareholders rather than corporation); Arbitrage Fund v. Petty, 307 So. 3d 119, 128 (Fla. 3d DCA 2020) (agreeing that Dinuro did not interpret "special injury" requirement to

17

preclude direct action where "more than one shareholder suffered the same harm, jointly suing another group of shareholders or fiduciaries").

Because the trial court erred by finding that Joan and Cheryl could not recover individually for the counterclaims predicated on John's breach of the unanimity provision of the shareholders' agreement, we reverse and remand on this issue for further proceedings.

### IV. Damages

Next, we examine three claims for which the trial court calculated damages caused by John's misappropriation of SDC funds. First, the court found that John had misappropriated SDC proceeds by causing SDC to execute a lease with a property owned by Peacock Restaurant, LLC (another company in which he and Lucila had an undisclosed ownership interest), causing SDC to make interest-free loans to Peacock Restaurant in order to prevent it from going into foreclosure, and subsequently causing SDC to purchase the failing restaurant property for $440,000. But the court declined to award any damages due to insufficient evidence of the value of the property. Joan and Cheryl allege that this conclusion is inconsistent with the evidence presented at trial. "A trial court's determination of the appropriate method to determine statutory fair value is reviewed for abuse of discretion." Lally Orange Buick Pontiac GMC, Inc. v. Sandhu, 207 So. 3d 981, 985 (Fla.

5th DCA 2016). "Under the certainty rule, which applies in both contract and tort actions, recovery is denied where the fact of damages and the extent of damages cannot be established within a reasonable degree of certainty." Miller v. Allstate Ins. Co., 573 So. 2d 24, 27–28 (Fla. 3d DCA 1990). "[T]he plaintiff must present evidence regarding a reasonable certainty as to its amount of damages, and a plaintiff's claim cannot be based upon speculation or guesswork." Gonzalez v. Barrenechea, 170 So. 3d 13, 16 (Fla. 3d DCA 2015) (quotation omitted). However, "[a]t the same time, Florida law has long specified that reasonable certainty as to the facts of injury and causation is more critical than reasonable certainty as to the computation of the resultant losses." Id. (quotation omitted); see also Twyman v. Roell, 166 So. 215, 218 (Fla. 1936) ("If it is clear that substantial damages have been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether."). Here, in support of damages for this claim, Joan and Cheryl proffered an appraisal valuing the total leased fee interest of the Peacock Restaurant property at $1,500,000, as well as the testimony of a certified public accountant who evaluated the appraisal and the financial status of the restaurant and testified that Joan and Cheryl were damaged in the amount of $706,666.67, representing two thirds of the appraised value of the property minus the $440,000 sale price. The trial court rejected the

19

appraisal and testimony as a basis for relief, noting also that the accountant was not an expert in valuation. While a plaintiff shouldn't be punished for some uncertainly in a valuation calculation "when the difficulty in establishing damages is caused by the defendant," and the defendant "should bear the risk of uncertainty that his own wrong created," Miller, 573 So. 2d at 28, that doesn't mean that the finder of fact is required to accept what it concludes is a fanciful or completely unsupported valuation. So we see no abuse of discretion and affirm this finding.

Second, Joan and Cheryl allege that the court erred by finding that John misappropriated $82,182.92 in bankruptcy proceeds recoverable by SDC by improperly assigning the recovery rights to his own private company, John W. Schmitz, P.A., but awarding SDC only that much in damages despite the full value of the claim after interest being $98,493.92. While the record may also support the larger amount, we can't say it was an abuse of discretion for the trial court to choose not to award the hypothetical interest.

Third, John and Lucila claim that the court abused its discretion by awarding Joan and Cheryl $110,000 each on their statutory records-inspection claim—representing 5% of their respective 1/3 stakes in SDC—based solely on John's testimony valuing the company at $6.6 million. See 805 Ill. Comp. Stat. 5/7.75(d) (providing for damages of "up to ten per cent

of the value of the shares owned by such shareholder" where corporation refuses to allow inspection and copying of records by shareholder). As this court has explained, "[t]he amount of damages claimed need not be proved with exactitude, but it must not be based on speculation or guesswork. The proof adduced must be sufficiently definite for a reviewing court to perform its review obligation." Saewitz v. Saewitz, 79 So. 3d 831, 834 (Fla. 3d DCA 2012) (citations omitted). We take no issue with the trial court's rejection of the valuation provided by Brent Zeigler, a licensed certified public accountant and former interim president of SDC after John's ouster, who had estimated the present value of the company at $7.5 million. But John's testimony can fare no better, as it was offered merely as a ballpark valuation based on his recollection of a prior estimate prepared by Northern Trust. Absent any competent, substantial evidence from which the trial court could value the company, we reverse and remand for entry in John and Lucila's favor on this count.

### V. Lucila Schmitz's Individual Liability

The parties both challenge the remedies imposed by the trial court, including the extent of Lucila's individual liability for John's acts. John and Lucila claim that the court could not impose a constructive trust against John's share of SDC because his ownership interest is jointly held with Lucila

21

in a purported "joint trust with right of survivorship." Joan and Cheryl cross-appeal to argue that regardless of whether such a "joint trust" existed, the court erred by failing to find Lucila jointly and severally liable for all damages against John despite finding that she participated in, benefitted from, and assisted in concealing most of his tortious acts. Our review of a trial court's imposition of equitable remedies is for abuse of discretion. See, e.g., Singer v. Tobin, 201 So. 2d 799, 800–01 (Fla. 3d DCA 1967) ("[G]enerally courts of equity have the fullest liberty in molding decrees to the necessity of the occasion, regardless of the prayer.").

However, after the appeal of the final judgment, in a contempt proceeding, the trial court made additional findings specifically rejecting creation of a joint trust as to John's ownership of SDC. Because the trial court was divested of jurisdiction to make these additional findings at the time, they cannot provide the sufficient competent substantial evidence to undergird the trial court's findings. See, e.g., Schultz v. Schickedanz, 884 So. 2d 422, 424 (Fla. 4th DCA 2004) ("A trial court is divested of jurisdiction upon notice of appeal *except* with regard to those matters which do not interfere with the power and authority of the appellate court or with the rights of a party to the appeal which are under consideration by the appellate court." (quotation omitted)).

Support for the trial court's imposition of the trust rests on factual findings made after the appeal divested the trial court's jurisdiction to make such findings. See § 736.0402, Fla. Stat. (listing elements for creation of a trust, including an ascertainable beneficiary and duties of trustee); Fraser v. Lewis, 187 So. 2d 684, 687 (Fla. 3d DCA 1966) ("A clear preponderance of the proof is required to establish an express trust. To constitute a valid trust in personalty three circumstances must occur: sufficient words to raise it; a definite subject matter; and a certain and ascertained subject." (quotations omitted)). Accordingly, we vacate the findings made without jurisdiction as they pertain to the issues on appeal, reverse the imposition of the constructive trust, and remand to conduct additional proceedings, including making any necessary factual findings and conclusions of law.

## VI. Prejudgment Interest

Finally, we remand for correction of the amount of prejudgment interest awarded to Joan and Cheryl. A trial court's decision with respect to prejudgment interest is reviewed de novo. See Burton Fam. P'ship v. Luani Plaza, Inc., 276 So. 3d 920, 922 (Fla. 3d DCA 2019). The trial court computed prejudgment interest from the dates of loss through July 1, 2020, rather than February 19, 2021, the date of the final judgment. "[W]hen a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses,

23

plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 215 (Fla. 1985). "[F]or the purpose of assessing prejudgment interest, a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." Id. at 214 (quoting Bergen Brunswig Corp. v. State, Dep't of Health & Rehab. Servs., 415 So. 2d 765, 767 (Fla. 1st DCA 1982)). "Once a verdict has liquidated the damages as of a date certain, computation of prejudgment interest is . . . a purely ministerial duty of the trial judge or clerk of the court to add the appropriate amount of interest to the principal amount of damages awarded in the verdict." Id. at 215.  In a nonjury trial, the final judgment has the effect of fixing damages for purposes of interest computation. See Amerace Corp. v. Stallings, 823 So. 2d 110, 114 (Fla. 2002) (analyzing Argonaut and finding that plaintiff is not entitled to prejudgment interest for time between jury verdict liquidating damages and entry of final judgment, and that proper procedure would have been to request trial court enter judgment shortly after verdict); Palm Beach Cnty. Sch. Bd. v. Montgomery, 641 So. 2d 183, 184 (Fla. 4th DCA 1994); Budget Rent-A-Car Sys., Inc. v. Castellano, 764 So. 2d 889, 892 (Fla. 4th DCA 2000) (affirming computation of prejudgment interest through date of verdict instead of date of judgment where damages were

24

fixed in verdict form). Thus, we remand for the trial court to recalculate prejudgment interest from the dates of loss through the date of a final (or amended final) judgment fixing the value of that loss. See Burton, 276 So. 3d at 924 (finding that fees incurred in litigating attorneys' fees were fixed at time of amended judgment); Bayview Loan Servicing, LLC v. Cross, 286 So. 3d 858, 863 (Fla. 5th DCA 2019) (same).

Affirmed in part, reversed in part, and remanded for further proceedings.